UNITED STATES POSTAL
SERVICE, Plaintiff,

v.

AMERICAN POSTAL WORKERS
UNION, AFL—CIO,
Defendant.

No. Civ.A.98–1355–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

March 22, 1999.

Helen F. Fahey, Dennis E. Szybala, U.S. Attorney's Office, Alexandria, VA, for United States Postal Service, plaintiff.

---

**458**

Peter Joshua Leff, O'Donnell, Schwartz & Anderson, PC, Washington, DC, for American Postal Workers Union, AFL—CIO, defendant.

## MEMORANDUM OPINION

HILTON, Chief Judge.

This matter is before the Court on Plaintiff's and Defendant's Motions for Summary Judgment.

Plaintiff, the United States Postal Service ("USPS") and Defendant, the American Postal Workers Union ("APWU"), are parties to a collective bargaining agreement known as the National Agreement ("Agreement"). Article 15.1 of the Agreement contains a comprehensive grievance arbitration procedure for the resolution of any "dispute, difference, disagreement or complaint between the parties related to wages, hours, and conditions of employment." The final step of this procedure is binding arbitration. In the event that a dispute proceeds to this final step, Article 15.5.A(6) provides that the arbitrator's decisions "shall be limited to the terms and provisions of this Agreement, and in no event may the terms and provisions of this Agreement be altered, amended, or modified by an arbitrator." While Article 15 provides most postal employees access to the grievance arbitration procedure, Article 12.1.A specifically exempts probationary employees from this procedure.[1]

Huong Hoang was employed by the USPS as a window clerk in Arlington, Virginia. During Ms. Hoang's probationary period the USPS notified her that she had been rated "unsatisfactory" in her last probationary period evaluation and that she would be separated from the USPS the following day.

Notwithstanding the language in Article 12.1.A of the Agreement, the APWU filed a grievance on Hoang's behalf, challenging her separation. The APWU claimed that the process used to effect the separation did not comply with certain provisions of the USPS' Employee and Labor Relations Manual ("ELM"), arguably incorporated into the Agreement via Article 19.[2] Specifically, the APWU contended that Hoang's separation was not effected because the proper USPS official did not initiate the separation, as is required by ELM 365.325, and because the notice provided Hoang did not contain "conclusions as to the inadequacies of performance or conduct," as is required by ELM 365.326. Because separation was not properly effected due to the defects of the USPS, the APWU contended that Hoang's separation must be effected as a removal pursuant to Article 16 of the Agreement, as is required by ELM 365.323. The USPS denied the APWU's grievance at all steps of the grievance procedure, and the APWU appealed the matter to arbitration.

Arbitrator Christopher Miles heard the case on April 7, 1998. The USPS challenged the arbitrator's authority to hear the matter, and the parties bifurcated the case. As a result, the only issue before Arbitrator Miles was the arbitrability of a grievance challenging the separation of a probationary employee. Arbitrator Miles found the grievance arbitrable. Specifically, he found that:

"Those parts of all handbooks, manuals and published regulations of the Postal Service, that directly relate to wages, hours or working conditions, as they apply to employees covered by this Agreement, shall contain nothing that conflicts with this Agreement, and shall be continued in effect except that the Employer shall have the right to make changes that are not inconsistent with this Agreement and that are fair, reasonable, and equitable."

---

1. In pertinent part, Article 12.1.A reads as follows:

"The probationary period for a new employee shall be ninety (90) calendar days. The Employer shall have the right to separate from its employ any probationary employee at any time during the probationary period and these probationary employees shall not be permitted access to the grievance procedure in relation thereto."

2. In pertinent part, Article 19 reads:

"Article 12, Section 1 of the Agreement entitles the Postal Service to terminate probationary employees prior to the expiration of their probationary period; however, in taking such action, the Postal Service must do so in accordance with the applicable provisions of the Agreement; i.e., Section 365.32 of the ELM."

The USPS now appeals this determination. Their Complaint seeks declaratory and injunctive relief pursuant to Section 1208(b) of the Postal Reorganization Act, 39 U.S.C. § 1208(b), vacating Arbitrator Miles' award as beyond the arbitrator's authority. The APWU counterclaims for the entry of an Order enforcing and directing the USPS to comply with the Miles' award, and granting a permanent injunction prohibiting the USPS from violating the Agreement by failing to comply with the Miles' award. Further, the APWU prays for an Order requiring the USPS to pay in full the APWU's attorneys' fees and costs.

Both sides have now moved for summary judgment. Summary judgment is appropriate when there is no genuine issue as to any material fact. *See* Fed.R.Civ.P. 56(c). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A material fact in dispute appears when its existence or nonexistence could lead a jury to different outcomes. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue exists when there is sufficient evidence on which a reasonable jury could return a verdict in favor of the nonmoving party. *See id.* Unsupported speculation is not enough to withstand a motion for summary judgment. *See Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411–12 (4th Cir. 1986). Summary judgment is appropriate when, after discovery, a party has failed to make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Both sides agree that this case involves no genuine issue as to any material fact, and that summary judgment is appropriate. They disagree, however, about the interpretation of the Agreement.

As a matter of Federal labor policy, arbitration is the favored means of resolving labor disputes. *See* 29 U.S.C. § 173(d). Accordingly, an arbitration award should be sustained if it "draws its essence" from the collective bargaining agreement. *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Further, disputes are presumed arbitrable. *See United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) ("An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage"). The Fourth Circuit has recognized that judicial review of arbitration awards is "among the narrowest known to the law" and "every presumption is in favor of the validity of the award." *Richmond, Fredericksburg & Potomac R.R. Co. v. Transportation Communications Int'l Union*, 973 F.2d 276, 278 (4th Cir. 1992).

Despite the preference courts express in favor of deferring to arbitration awards, courts will review and set-aside awards, when appropriate, based upon a number of grounds. For instance, courts will review arbitration decisions for a "manifest disregard of law." *American Postal Workers Union v. United States Postal Serv.*, 682 F.2d 1280, 1284 (9th Cir.1982). The Federal Arbitration Act provides additional grounds for vacating awards, including

fraud, arbitrator bias or misconduct, procedural unfairness, and the ground that the arbitrator exceeded his authority. *See* 9 U.S.C. § 10.[3]

 Most significantly, courts will review arbitration awards to insure that the arbitrator based his decision on an interpretation of the parties' contract rather than on his own "brand of industrial justice." *Enterprise Wheel,* 363 U.S. at 597, 80 S.Ct. 1358. Thus, courts will decline to enforce awards which are so arbitrary as to be without rational basis. *See United States Postal Serv. v. National Ass'n of Letter Carriers,* 847 F.2d 775, 778 (11th Cir.1988). The issue of whether a dispute is subject to arbitration, and thus within the arbitrator's power to consider, is a matter strictly for judicial, rather than arbitral, determination. *See AT & T Techs., Inc. v. Communications Workers,* 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).

 The USPS argues that in concluding that he could hear the merits of a probationary employee's discharge, Arbitrator Miles altered the meaning of Article 12.1.A, which the USPS claims clearly and unequivocally denies probationary employees all access to the grievance-arbitration procedure in relation to their separation. Since altering the meaning of any provision of the Agreement is forbidden by Article 15.5.A(6), the USPS claims there was no rational basis for Miles' decision. Instead, the USPS contends, Miles dispensed his own "brand of industrial justice" in arriving at a decision which directly contradicts the parties' Agreement.

The APWU asserts that they do not challenge the USPS' right to separate Ms. Hoang from the USPS during her probationary period, but that they do challenge

whether Ms. Hoang was actually separated during her probationary period. It is the APWU's argument that Arbitrator Miles did not exceed his authority under the Agreement because Article 12 does not even apply in Ms. Hoang's situation. For Article 12 to apply, APWU argues, it first must be determined whether the probationary employee was actually separated. The determination about whether the employee was separated, the APWU contends, is a matter subject to arbitration due to the incorporation of the ELM provisions into the Agreement through Article 19. Further, given the presumption of arbitrability and the courts' considerable deference to arbitration awards, the APWU argues that the Miles' award must be upheld.

In *United States Postal Serv. v. American Postal Workers Union,* 922 F.2d 256 (5th Cir.1991), the Court considered an arbitrator's determination that the separation of a probationary employee was arbitrable. In that case, the USPS separated a probationary employee during the employee's probationary period while that employee was on compensable leave due to a work-related automobile accident. *Id.* at 257. The APWU filed a grievance pursuant to the Agreement[4], claiming that the employee was fired because of his compensable injury. *Id.* The APWU argued, among other things, that the firing violated the regulations implementing the compensable leave statute. *Id.* at 257–58. The arbitrator ruled that the grievance was arbitrable. *Id.* at 258.

In reviewing the District Court's grant of summary judgment in favor of the USPS based upon the arbitrator's clearly exceeding his authority the Court stated:

"[w]e agree with the Postal Service that even when, as in this case, a proba-

---

3. Although the Federal Arbitration Act applies specifically to commercial arbitration, courts look to that Act for guidance in reviewing labor arbitration awards. *See United States Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 40 n. 9, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987).

4. The National Agreement in effect at that time is substantively identical to the one at issue in this case with respect to Article 12.1.A, Article 15.5.A(6) and Article 19.

tionary employee alleges that his termination violates articles 19 and 21 of the National Agreement, article 12 of that Agreement clearly denies probationary employees any right to resort to grievance and arbitration procedures. Nonprobationary (permanent) employees alleging similar violations clearly have recourse to arbitration, but the Agreement expressly denies probationary employees that right. Such is the Agreement for which the parties bargained."

*Id.* at 259. In essence, the Court found that the "clear and unequivocal" language in Article 12 trumped the general rights in the ELM which were incorporated via Articles 19 and 21. *Id.* at 259–260 ("When a specific and a general provision of an agreement conflict, well-established principles of construction require that the specific trump the general provision"). Hence, in ruling that the grievance was arbitrable, the arbitrator had clearly exceeded his authority under the Agreement. *Id.* at 260.

The facts are very similar in the present case. Here, a probationary employee was separated during her probationary period, and the APWU asserts that they have the right to arbitrate whether the separation was effective due to rights created in the ELM and incorporated into the Agreement pursuant to Article 19. Here, too, the arbitrator has ruled that the grievance was arbitrable, notwithstanding the language of Article 12.1.A.

The APWU contends that the 5th Circuit case does not control because in that case the APWU was challenging the reasons given for the separation of the probationary employee, while in this case the APWU is asserting that the separation was not properly effectuated during the probationary period. Because Ms. Hoang was not properly terminated pursuant to the ELM provisions incorporated through Article 19, the separation was ineffective and the grievance is arbitrable. According to the APWU, the bar in Article 12 is not even an issue in this case.

The Court is not persuaded by the APWU's argument and finds that procedural challenges to the separation of a probationary employee are no more arbitrable than challenges to the substantive reasons for the separation. In clear and unequivocal language, Article 12 of the Agreement prohibits all grievances relating to the separation of a probationary employee. Even assuming, *arguendo,* that Article 19 incorporates the provisions found in the ELM, the Court agrees with the 5th Circuit decision that "[w]hen a specific and a general provision of an agreement conflict, well-established principles of construction require that the specific trump the general provision." *Id.*

The purpose of Article 12 is to preserve the USPS' discretion to separate probationary employees without having to defend the separation, whether against procedural or substantive attacks. *See American Postal Workers Union v. United States Postal Serv.,* 940 F.2d 704, 707 (D.C.Cir.1991). The interpretation proposed by the APWU, under which the USPS is able to separate a probationary employee for any reason but must adhere to the ELM's procedures, undermines this purpose. If the APWU position is correct, they would be able to use procedural arguments to grieve any separation of a probationary employee. This is not the result intended by the "clear and unequivocal" language of Article 12.

The Miles award renders the USPS' ability to separate probationary employees without having to defend the separation meaningless by allowing the APWU to seize upon an alleged procedural flaw as a sword with which to hack at Article 12. Because Article 15.5.A(6) provides that an arbitrator's decision "shall be limited to the terms and provisions of this Agreement, and in no event may the terms and provisions of this Agreement be altered, amended, or modified by an arbitrator," and because the result of the Miles award is a considerable alteration of Article 12.1.A, the Court finds that Arbitrator

Miles clearly exceeded his authority. Therefore, summary judgment in favor of the USPS is appropriate.