**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES POSTAL SERVICE,
Plaintiff-Appellee,

v.

No. 99-1562

AMERICAN POSTAL WORKERS UNION,
AFL-CIO,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-98-1355-A)

Argued: November 30, 1999

Decided: February 25, 2000

Before WILKINSON, Chief Judge, KING, Circuit Judge,
and Cynthia Holcomb HALL, Senior Circuit Judge of the
United States Court of Appeals for the Ninth Circuit,
sitting by designation.

_____

Affirmed by published opinion. Chief Judge Wilkinson wrote the
opinion, in which Senior Judge Hall joined. Judge King wrote a dis-
senting opinion.

_____

**COUNSEL**

**ARGUED:** Susan Lynne Catler, O'DONNELL, SCHWARTZ &
ANDERSON, P.C., Washington, D.C., for Appellant. Anne Norris

Graham, UNITED STATES POSTAL SERVICE, New York, New York, for Appellee. **ON BRIEF:** Peter J. Leff, O'DONNELL, SCHWARTZ & ANDERSON, P.C., Washington, D.C., for Appellant. R. Andrew German, Managing Counsel, Legal Policy, UNITED STATES POSTAL SERVICE, New York, New York; Helen F. Fahey, United States Attorney, Dennis E. Szybala, Assistant United States Attorney, Alexandria, Virginia, for Appellee.

_____

**OPINION**

WILKINSON, Chief Judge:

The American Postal Workers Union (APWU) and the United States Postal Service (Postal Service) are parties to a national collective bargaining agreement. This agreement gives the Postal Service the right to separate any probationary employee at any time during the 90-day probationary period. The agreement also unambiguously denies probationary employees access to the grievance procedure in relation to a separation. The APWU nonetheless filed a grievance attacking the separation of a probationary employee and appealed the matter to arbitration. In the face of clear contractual language to the contrary, the arbitrator held that the grievance was arbitrable. The district court vacated the award on the ground that the arbitrator exceeded his authority. See United States Postal Serv. v. American Postal Workers Union, 46 F. Supp. 2d 457 (E.D. Va. 1999). Because the arbitrator completely rewrote the collective bargaining agreement by creating a new class of arbitrable grievances, we affirm the district court's judgment.

I.

A.

This case revolves around the provisions of the 1994 national collective bargaining agreement (National Agreement) between appellant APWU and appellee Postal Service. Article 15 of the National Agreement prescribes a grievance-arbitration procedure for the resolution of any dispute between the parties "related to wages, hours, and condi-

2

tions of employment." The last step of this procedure is binding arbitration. If the parties reach arbitration, Article 15.5.A(6) dictates that an arbitrator's decisions "shall be limited to the terms and provisions of this Agreement, and in no event may the terms and provisions of this Agreement be altered, amended, or modified by an arbitrator."

Article 12 of the National Agreement, however, expressly excludes probationary employees from the grievance-arbitration procedure to contest a separation. New postal employees must serve a 90-day probationary period before becoming permanent employees. Article 12.1.A states: "The Employer shall have the right to separate from its employ any probationary employee at any time during the probationary period and these probationary employees shall not be permitted access to the grievance procedure in relation thereto." This unequivocal language is reinforced by Article 15.5.A(6)'s prohibition on arbitral modification of the agreement.

Article 19 of the National Agreement fortifies the supremacy of the contract's terms over any Postal Service handbook or manual. Article 19 provides: "Those parts of all handbooks, manuals and published regulations of the Postal Service, that directly relate to wages, hours or working conditions, as they apply to employees covered by this Agreement, shall contain nothing that conflicts with this Agreement, and shall be continued in effect except that the Employer shall have the right to make changes that are not inconsistent with this Agreement and that are fair, reasonable, and equitable."

B.

Huong Hoang was employed by the Postal Service as a part-time clerk in Arlington, Virginia. On February 19, 1997, during Hoang's probationary period, the Postal Service officially notified her in writing that she had been rated "unsatisfactory" in her last probationary evaluation and would be separated the following day.

The APWU then filed a grievance on Hoang's behalf challenging her separation. The APWU claimed, inter alia, that the Postal Service failed to comply with certain provisions of the Postal Service's Employee and Labor Relations Manual (ELM) in attempting to separate Hoang. The APWU asserted that the proper official did not initi-

3

ate the separation (ELM 365.325) and that the separation notice failed to include the requisite "conclusions as to the inadequacies of performance or conduct" (ELM 365.326). The APWU argued that the Postal Service's attempt to separate Hoang during her probationary period was therefore not effective and the Postal Service would instead have to follow the discharge procedure applicable to permanent employees if it wanted to terminate Hoang. The APWU contested Hoang's separation on other grounds as well, alleging that she received insufficient guidance and training and was a victim of discrimination. The APWU sought reinstatement of Hoang with back pay.

The Postal Service denied the APWU's grievance at all stages of the grievance process. The Postal Service also maintained throughout that the matter was non-grievable because it related to the separation of a probationary employee. The APWU then appealed the matter to arbitration. At the outset of the arbitration hearing, the Postal Service challenged the arbitrator's authority to hear the matter. The parties therefore agreed to bifurcate the case and first submitted only the question of arbitrability to the arbitrator. The Postal Service argued that the matter was not arbitrable because Article 12.1.A of the National Agreement denies probationary employees access to the grievance procedure for complaints relating to a separation. The APWU countered that Article 12.1.A does not prevent an arbitrator from deciding whether there was a procedurally effective separation of a probationary employee in the first place.

Arbitrator Christopher Miles found that the grievance was arbitrable (the Miles Award). He asserted that although Article 12 entitles the Postal Service to terminate probationary employees before the end of their probationary periods, the Postal Service must effectuate any such termination in accordance with the ELM. The arbitrator further stated that Article 19 of the National Agreement incorporated the provisions of the ELM relating to wages, hours, or working conditions. He concluded that a violation of ELM procedures was a violation of the National Agreement and therefore subject to arbitration under Article 15. The arbitrator then ordered that a hearing be scheduled on the merits of the grievance.

The Postal Service filed suit in the United States District Court for the Eastern District of Virginia. The Postal Service asked the court to

4

vacate the Miles Award. The APWU filed a counterclaim seeking to enforce the Miles Award, as well as a claim for attorney's fees and costs. After both parties moved for summary judgment, the district court vacated the award. The district court ruled that Arbitrator Miles exceeded his authority by issuing an award that was directly contrary to the language of the parties' collective bargaining agreement. See United States Postal Serv. v. American Postal Workers Union, 46 F. Supp. 2d at 461-62. Specifically, the district court found that the arbitrator's decision altered the terms of Article 12.1.A and therefore violated Article 15.5.A(6)'s prohibition on any alteration of the National Agreement by an arbitrator. See id. The APWU now appeals.

## II.

It is important to note at the outset that judicial review of arbitration awards is extremely limited -- in fact, it is "among the narrowest known to the law." Union Pac. R.R. v. Sheehan , 439 U.S. 89, 91 (1978) (internal quotation marks omitted). A court sits to "determine only whether the arbitrator did his job -- not whether he did it well, correctly, or reasonably, but simply whether he did it." Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union , 76 F.3d 606, 608 (4th Cir. 1996). Indeed, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987). If courts were allowed to delve into the merits of an arbitration award, then the federal policy of settling labor disputes by arbitration would be seriously undermined. See United Steelworkers of Am. v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596 (1960). Such "judicial second-guessing . . . would transform a binding process into a purely advisory one, and ultimately impair the value of arbitration for labor and management alike." Westvaco Corp. v. United Paperworkers Int'l Union, 171 F.3d 971, 974 (4th Cir. 1999) (internal quotation marks omitted).

An arbitrator does not have carte blanche, however, to "dispense his own brand of industrial justice." Enterprise Wheel, 363 U.S. at 597. Rather, "an arbitrator is confined to interpretation and application of the collective bargaining agreement." Id. "[H]is award is legitimate only so long as it draws its essence from the collective

5

bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." Id. The requirement that the award "draw its essence" from the parties' agreement means that"[t]he arbitrator may not ignore the plain language of the contract." Misco, 484 U.S. at 38. When the arbitrator ignores the unambiguous language chosen by the parties, the arbitrator simply fails to do his job. See Mountaineer Gas, 76 F.3d at 610.**1**

Underlying judicial deference to arbitral awards is the principle that the terms of the parties' agreement are controlling. This same principle requires courts to vacate awards when an arbitrator exceeds his authority under a collective bargaining agreement. When the parties bargain for an arbitrator's construction of a contract, "the courts have no business overruling him because their interpretation of the contract is different from his." Enterprise Wheel, 363 U.S. at 599. Likewise, when the parties have not agreed to arbitrate a matter, the arbitrator lacks authority to resolve the matter,"[f]or arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960). An arbitrator "is rather part of a system of self-government created by and confined to the parties." Id. at 581 (internal quotation marks omitted).

_____

**1** Arbitrability is presumptively a matter for judicial determination. See AT&T Techs., Inc. v. Communications Workers of Am. , 475 U.S. 643, 649 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."). Here, however, the parties agreed to submit the question of arbitrability to the arbitrator. See Rock-Tenn Co. v. United Paperworkers Int'l Union, 184 F.3d 330, 334 (4th Cir. 1999) ("[A]lthough the determination of whether a party has agreed to arbitrate generally falls within the province of courts rather than of arbitrators, the parties can agree to arbitrate arbitrability."). In this case, the award is the declaration of arbitrability, and when the parties submit the question of arbitrability to the arbitrator, the award is -- like any merits award -- subject to the very deferential standard of review. The question before us is therefore "the familiar one of whether the arbitration award draws its essence from the collective bargaining agreement." Rock-Tenn, 184 F.3d at 336.

III.

The APWU asserts that it does not challenge the Postal Service's right to separate Hoang during her probationary period. It instead purports to challenge whether Hoang was actually separated during her probationary period. The APWU argues that Arbitrator Miles therefore acted within his authority in deciding that the grievance was arbitrable. It contends that his decision drew its essence from the National Agreement because he was simply construing the language of Articles 12 and 19. The APWU further argues that the Miles Award does not violate Article 12.1.A because nothing in that provision precludes an arbitrator from determining whether a probationary employee was actually separated in the first place.

We disagree. The arbitrator's decision that procedural attacks on the separation of a probationary employee are arbitrable contravenes the unambiguous language of Article 12.1.A. The terms of this provision are worth repeating: "The Employer shall have the right to separate from its employ any probationary employee at any time during the probationary period and these probationary employees shall not be permitted access to the grievance procedure in relation thereto" (emphasis added). This language is unqualified and admits of no exception. The provision makes no distinction whatsoever between procedural attacks on separations and substantive challenges. The sweeping phrase "in relation thereto" brings any separation-related grievance by a probationary employee within the ambit of the prohibition. In other words, so long as the matter involves probationary employees and the question of separation, no grievance may be brought. In fact, it is difficult to see how the parties could have been any clearer in prohibiting every kind of separation-related grievance by a probationary employee.

The arbitrator ruled that notwithstanding the clear language of Article 12, Article 19 somehow renders this matter grievable. He claimed that Article 19 incorporates Postal Service handbooks and manuals into the National Agreement, and that ELM violations are grievable by probationary employees because ELM violations are also violations of the National Agreement.

This argument, however, has no basis whatsoever in the National Agreement. Even assuming, arguendo, that Article 19 incorporates

7

the ELM into the National Agreement, there is no language either in the ELM or in Article 19 that even suggests ELM violations are grievable by probationary employees. Further, even if there were any hint in the ELM that probationary employees could grieve ELM violations, this hint would run smack into Article 12. And Article 19 unequivocally states that Postal Service handbooks and manuals "shall contain nothing that conflicts with this Agreement."

The dissent would also vitiate Article 12 by making alleged ELM violations grievable by probationary employees. But the question of whether a separation was effected in accordance with handbook procedures is plainly a separation-related matter. Under the plain terms of Article 12, it is therefore non-grievable. Indeed, no clearer example of a dispute "in relation [ ]to" the Postal Service's Article 12 "right to separate" probationary employees during the probationary period can be found. The contract makes non-grievable the entire class of disputes having any "relation" to separation, and the contract cannot be circumvented by attempting, as the dissent does, to subdivide that class.

Our conclusion is reinforced by the Fifth Circuit's decision in United States Postal Serv. v. American Postal Workers Union, 922 F.2d 256 (5th Cir. 1991) (USPS v. APWU). [2] In that case, the APWU sought to grieve the separation of a probationary employee on the ground that the Postal Service fired the employee because of a compensable work-related injury. This separation allegedly violated the Federal Employees' Compensation Act (FECA) and Postal Service regulations implementing FECA. The regulations at issue were promulgated pursuant to Article 21 of the National Agreement and found in the ELM. The APWU contended that despite the language of Article 12, violations of these ELM provisions were grievable because Article 19 incorporated the manual into the National Agreement.

The arbitrator in that case held that the grievance was arbitrable and found the Postal Service to be in violation of the National Agreement. The district court vacated the award and the Fifth Circuit

_____

[2] The National Agreement in effect at that time is substantively identical to the 1994 contract at issue here with respect to Article 12.1.A, Article 15.5.A(6), and Article 19.

8

affirmed on the ground that the language of Article 12 is "clear and unequivocal." Id. at 259. The court explained:

> We agree with the Postal Service that even when, as in this case, a probationary employee alleges that his termination violates articles 19 and 21 of the National Agreement, article 12 of that Agreement clearly denies probationary employees any right to resort to grievance and arbitration procedures. Non-probationary (permanent) employees alleging similar violations clearly have recourse to arbitration, but the Agreement expressly denies probationary employees that right. Such is the agreement for which the parties bargained.

Id. The court further held that the arbitrator was not permitted to find that Articles 19 and 21 grant probationary employees "the right to arbitration on issues concerning these articles that article 12 expressly denies them." Id.; see also American Postal Workers Union v. United States Postal Serv., 755 F. Supp. 1076, 1077-78 (D.D.C. 1989) (although Article 2 of National Agreement expressly allows grievance and arbitration of disputes arising under that provision, probationary employees have no access to grievance-arbitration procedure because Article 12 denies them that right).

The APWU argues here for the result rejected by the Fifth Circuit. The APWU attempts to circumvent the Article 12 bar by alleging an ELM violation and then claiming that Article 19 enables a probationary employee to grieve such a violation. We join the Fifth Circuit in holding that the National Agreement is not susceptible to such a strategy.

The APWU attempts to distinguish the Fifth Circuit decision on the ground that it involved only a substantive challenge to a separation and not a procedural objection. This argument fails, however, because neither the National Agreement nor the Fifth Circuit made any procedural/substantive distinction. The Fifth Circuit instead tracked the unequivocal language of Article 12 in holding that "a probationary employee is not permitted access to the grievance procedure in relation to a termination within the probationary period." USPS v. APWU, 922 F.2d at 261. To hold otherwise would both negate the language

9

of Article 12 and undermine its purpose of allowing the Postal Service to separate probationary employees without having to defend the separation through the grievance procedure.

Indeed, for purposes of the National Agreement, the APWU's attempt to distinguish procedural from substantive challenges is nothing more than a false dichotomy. Both substantive and procedural challenges would require the Postal Service to mount the same extensive defense of its actions toward probationary employees as it must when it acts to terminate permanent employees. To allow any kind of separation-related grievance by a probationary employee would thus move in the direction of forcing the Postal Service to treat probationary employees the same as permanent employees. But it is the very purpose of Article 12.1.A to establish a clear distinction between probationary and permanent employees and afford them different protections. Any blurring of this distinction thus thwarts the purpose of the National Agreement.

Further, it is often difficult to distinguish between a "substantive" attack on a separation and one that is merely "procedural." For example, the APWU charges in this case that the Postal Service failed to supply adequate conclusions as to the deficiencies of Hoang's performance when it stated, "The reason for this separation is that you were rated unsatisfactory during your last probationary evaluation." An attack on the "adequacy" of this statement can come perilously close to a substantive challenge to the Postal Service's evaluation and separation of Hoang. Moreover, at steps two and three of the grievance procedure, the APWU challenged both the substantive basis and the procedural propriety of Hoang's separation. To allow the grievance at issue here thus risks opening the door to substantive grievances that are ushered in behind a putatively procedural attack.

The APWU also raises the specter that disallowing this grievance will permit the Postal Service to declare with impunity that an employee was separated even after the expiration of the probationary period. We disagree. Once the probationary period has expired without any action to separate the employee, Article 12 no longer denies the employee access to the grievance procedure. In this case, however, it is undisputed that Hoang's Postal Service supervisor acted to separate her within the 90-day probationary period. Whether the

10

Postal Service followed all ELM procedures in taking this action is irrelevant to the grievability of this matter. All that counts is that the matter involves (1) a probationary employee and (2) a separation. In fact, the APWU itself admitted in its arbitration brief that these elements are present: "The case before the Arbitrator involves the <u>termination</u> of a <u>probationary employee</u> at the Arlington, Va. Post Office" (emphasis added).

The APWU essentially seeks to grieve through the back door the separation of a probationary employee. The parties, however, closed this door when they consented to the clear and unequivocal language of Article 12.1.A in negotiating the National Agreement. Attempts to pry this door open are absolutely barred by Article 12.1.A itself, Article 15.5.A(6)'s prohibition of arbitral modification of the agreement, and Article 19's declaration of the supremacy of the National Agreement over any handbook or manual.

IV.

Parties to a collective bargaining agreement get what they bargain for -- no less and no more. If the APWU wished probationary employees to have access to the grievance procedure to challenge a separation, it could have bargained for such a right. Indeed, the APWU remains free to bargain for this right in the future. But the APWU cannot gain through arbitration what it could not acquire through negotiation. If the parties unambiguously agree that a certain class of disputes is not subject to the grievance procedure, then no arbitrator or court may reach the opposite conclusion. To permit otherwise would undermine the entire purpose of collective bargaining agreements -- namely to allow the parties to control the terms of their relationship through "a system of industrial self-government." <u>Warrior & Gulf Navigation Co.</u>, 363 U.S. at 580.

Of course, probationary employees are not bereft of all opportunities to press certain kinds of separation-related complaints. They may proceed under any appropriate federal civil rights, labor, or civil service law. And if a probationary employee doubts whether an apparently defective separation notice was actually meant to separate him, he can go to his supervisor or a higher authority in the Postal Service to resolve the matter. But the one remedy he surely does not have is

11

the remedy plainly denied by the National Agreement-- access to the grievance procedure.

V.

Article 12.1.A of the National Agreement states:"The Employer shall have the right to separate from its employ any probationary employee at any time during the probationary period and these probationary employees shall not be permitted access to the grievance procedure in relation thereto." The parties thus bargained that anything having to do with the termination of a probationary employee is not grievable. Because the arbitrator negated this clear language in allowing a probationary employee to have access to the grievance procedure, he was not even "arguably construing or applying the contract." Misco, 484 U.S. at 38. His award therefore did not draw its essence from the agreement and must be vacated. See id. ; Enterprise Wheel, 363 U.S. at 597. The judgment of the district court is accordingly

AFFIRMED.

KING, Circuit Judge, dissenting:

Contrary to the majority's assertions, the APWU is not attempting to circumvent Article 12 by contesting the separation of a probationary employee; rather, the APWU has simply challenged whether the "separation" of postal employee Huong Hoang actually occurred. Before Article 12's bar to the grievance process applies, there must be an initial determination that Hoang was separated in accordance with the National Agreement. If the contractual requirements for separation were not satisfied within Hoang's probationary period, then the Article 12 bar does not apply and the grievance is arbitrable. Accordingly, I agree with Arbitrator Miles's ruling that the grievance at issue here is subject to arbitration. Because I find error in the district court's decision to vacate the Miles Award, I am compelled to dissent.

I.

As the majority points out, judicial review of arbitration awards is extremely limited. Ante at 5. In accordance with national labor policy,

12

arbitration is the favored means of resolving labor disputes. Therefore, the standard of judicial review for arbitration awards is highly deferential: federal courts should sustain an arbitration award if the award "draws its essence" from the collective bargaining agreement. United Steelworkers of Am. v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960).

In fact, as the majority acknowledges, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." Ante at 5, quoting United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987). Moreover, judicial deference to arbitration applies "even when the arbitrator's interpretation resolves a question relating to the scope of the arbitrator's own authority." Westvaco Corp. v. United Paperworkers Intern., 171 F.3d 971, 975 (4th Cir. 1999) (citing W.R. Grace & Co. v. Rubber Workers, 461 U.S. 757, 765 (1983); Norfolk & Western Ry. v. Transp. Communications Int'l Union , 17 F.3d 696, 699 (4th Cir. 1994)). This deferential standard of review is premised on the notion that "[i]t is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." Enterprise Wheel, 363 U.S. at 599.

II.

In evaluating the propriety of the Miles Award, it is critical that we accurately identify the arguments before us. The APWU has not challenged the Postal Service's general right to separate a probationary employee during her probationary period. Instead, the APWU argues simply that any dispute concerning whether the separation of postal employee Huong Hoang was properly effectuated during her probationary period is subject to arbitration.**1**

_____

**1** The arbitrator did not reach the issue of whether the Postal Service's separation of Hoang was in fact deficient. The parties agreed to bifurcate the case, and this appeal involves only the arbitrator's determination regarding arbitrability.

13

A.

Article 12 of the National Agreement governs the termination of probationary employees. Article 12.1.A provides:

> The probationary period for a new employee shall be ninety (90) calendar days. The Employer shall have the right to separate from its employ any probationary employee at any time during the probationary period and these probationary employees shall not be permitted access to the grievance procedure in relation thereto.

Relying on this broad language, the majority concludes that any separation-related grievance by a probationary employee is contractually prohibited. What the majority fails to acknowledge, however, is the legal significance attached to the term "separate" within the context of Article 12.1.A.

Article 19 of the National Agreement incorporates by reference certain provisions of the Employee Labor Manual ("ELM") setting forth the procedural requirements for separating probationary employees.[2] First, section 365.325 of the ELM addresses who may initiate the separation of a probationary employee:"Supervisors may recommend separation-disqualification, but such recommendations must be referred for decision to the official having authority to take the action."

Second, section 365.326 governs the process of actually separating a probationary employee:

> If an appointing official decides to terminate an employee who is serving a probationary period . . . the employee's ser-

_____

[2] Article 19 provides:

> Those parts of all handbooks, manuals and published regulations of the Postal Service, that directly relate to wages, hours or working conditions, as they apply to employees covered by this Agreement, shall contain nothing that conflicts with this Agreement, and shall be in continued effect . . . .

14

vices are terminated by notifying the employee in writing why she or he is being terminated and the effective date of the action. The information in the notice regarding the termination must, at a minimum, consist of the appointing official's conclusions as to the inadequacies of performance or conduct.

Third, sections 365.323 and 365.327 of the ELM address the probationary period. Section 365.327 indicates that"notice of separation must be given to the employee before the end of the probationary or trial period." Likewise, section 365.323 provides:

> Separation-disqualification must be effected during the probationary period except as provided in 365.321. . . . Any separation based on disqualification not effected during the probationary period, as provided in 365.321, even though the action is based on unsatisfactory performance during the probationary period, must be effected as a removal.

As the latter provision makes clear, a separation not effected in accordance with these procedures during the probationary period must be effected as a "removal" of a non-probationary employee, in which case the Postal Service must demonstrate "just cause" and the employee must have access to the grievance process. **3** Therefore, if these requirements for separation, incorporated into the National Agreement by Article 19, were not satisfied within Hoang's proba-

_____

**3** Article 16.1 governs the discipline of non-probationary employees, and provides:

> In the administration of this Article, a basic principle shall be that discipline should be corrective in nature, rather than punitive. <u>No employee may be disciplined or discharged except for just cause</u> such as, but not limited to, insubordination, pilferage, intoxication (drugs or alcohol), incompetence, failure to perform work as requested, violation of the terms of this Agreement, or failure to observe safety rules and regulations. <u>Any such discipline or discharge shall be subject to the grievance-arbitration procedure provided for in this Agreement</u>, which could result in reinstatement and restitution, including back pay.

(emphasis added).

15

tionary period, the Article 12 bar does not apply and the underlying dispute is arbitrable.

B.

Despite the straightforwardness of this interpretation, the majority concludes that there is no basis in the National Agreement for asserting that Hoang has the right to arbitrate. In support of this conclusion, the majority relies on three primary points.

1.

First, the majority concludes that the language of Article 12.1.A is "unqualified" and "makes no distinction whatsoever between procedural attacks on separations and substantive challenges." Ante at 7. Admittedly, the language of Article 12 makes no such distinction; it simply prohibits all challenges to the separation of a probationary employee. However, for that prohibition to apply, there must in fact have been a "separation" within the meaning of the National Agreement.

2.

Second, the majority concludes that "[w]hether the Postal Service followed all ELM procedures in taking this action[to separate Hoang] is irrelevant to the grievability of this matter." Ante at 10-11. Instead, the relevant fact is the "undisputed" finding that "Hoang's Postal Service supervisor acted to separate her within the 90-day probationary period." Id. (emphasis added). I disagree. Whether the Postal Service "acted to" or attempted to separate Hoang is irrelevant to our analysis; for Article 12's prohibition to apply, the Postal Service had to actually effect the separation within the 90-day period. The Postal Service itself drafted the regulations describing in detail the requirements to effectuate the separation of a probationary employee; the Postal Service and the APWU then agreed to incorporate these requirements into the National Agreement. Thus, if those conditions are not satisfied within the probationary period, there is no separation within the meaning of the National Agreement, and the Article 12 bar does not apply to prohibit access to the grievance procedure. **4** To illustrate this
_____
**4** Contrary to the majority's contention, the conditions required to effect a separation do not conflict with Article 12 and therefore cannot be said

16

straightforward interpretation of the National Agreement, consider the requirement embodied in sections 365.323 and 365.327 of the ELM mandating that notice of separation be given during the course of a probationary employee's 90-day probationary period. If such notice of separation is not given until after an employee has completed the probationary period, no one could reasonably assert that a grievance brought to challenge such a defective separation was not grievable. Yet, the other separation requirements are no less critical. If a challenge to the timing of a separation notice is arbitrable, then challenges to other defects in the Postal Service's attempts to separate probationary employees are also arbitrable. In either case, the Postal Service's inadequate compliance with the separation requirements would result in the failure to provide proper notice within the probationary period, and thus result in non-probationary status for the employee in question.**5**

3.

Finally, the majority relies on the Fifth Circuit's decision in <u>United States Postal Service v. American Postal Workers Union</u>, 922 F.2d 256 (5th Cir. 1991), to support its conclusion that Article 12 trumps any rights Hoang may have under other provisions of the National Agreement. However, the Fifth Circuit's decision is inapplicable here.

_____

to run afoul of Article 19's mandate that Postal Service handbooks and manuals "contain nothing that conflicts" with the National Agreement. Rather, Article 19's incorporation of the ELM into the National Agreement requires that the ELM's provisions have the same force and effect as any other language in the National Agreement.

**5** In support of this argument, the APWU points to numerous arbitral decisions consistent with the Miles Award. <u>See e.g.</u>, Case No. N1C-1E-D 27209 (1985) (Zumas, Arb.) (concluding that "[i]nasmuch as [the employer] failed to effectively separate Grievant within the 90-day probationary period, he is entitled to have access to the grievance procedure"); Case No. E4C-2M-D 36879 (1987) (Cushman, Arb.) (holding oral termination ineffective to separate probationary employee because "a written notification of separation is the sole and exclusive method of separation of a probationary employee for the reasons set forth under 365.326."); Case No. D90C-1D-D95030737 (1995) (Zobrak, Arb.) (holding that if grievant was not properly separated prior to end of probationary period, he does have access to grievance procedure).

17

In that case, there was no question concerning whether the Postal Service had properly separated the probationary employee in accordance with the ELM, as incorporated into the National Agreement. Instead, the only issue was whether the probationary employee's substantive challenge that he had been separated for a compensable work-related injury (in violation of the Federal Employees' Compensation Act and Articles 19 and 21 of the National Agreement) was subject to the grievance process.

The Fifth Circuit rejected the employee's challenge and affirmed the district court's decision to vacate the arbitration award, holding that "a probationary employee is not permitted access to the grievance procedure in relation to a termination within the probationary period." 922 F.2d at 261. The Fifth Circuit's holding, however, was premised on the court's finding that the separation was properly effectuated during the employee's probationary period:

> The union insists that a probationary employee dismissed while on compensable leave is not a probationary employee. We disagree. Leave for injury suspends the running of the clock on the probationary period, but it does not alter the employee's status as a probationary employee.

Id. at 260. Thus, this holding merely stands for the proposition that if the separation of a probationary employee is effectuated during the probationary period, Article 12 denies access to the grievance procedure to challenge the basis of the separation, even if that basis allegedly contravenes another provision of the National Agreement. In other words, the APWU cannot challenge the Postal Service's reasons for separating a probationary employee. However, this holding in no way suggests that the APWU cannot access the grievance procedure to challenge whether a separation actually occurred. If Hoang had completed her probationary period without being properly separated, the Fifth Circuit's decision (and Article 12's bar) simply would not apply.

C.

It is worth reemphasizing that the issue before us is not whether the separation of a probationary employee is arbitrable; the issue is

18

whether the arbitrator's determination that he could decide whether Hoang continued to be employed beyond her probationary period -- due to the Postal Service's failure to effectively separate her -- draws its essence from the National Agreement. To resolve this question, we are charged with determining whether the arbitrator did his job -- not whether he did it well, correctly, or reasonably, but simply whether he did it. Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union, 76 F.3d 606, 608 (4th Cir. 1996) (citation omitted).

Here, the parties agreed to submit the question of arbitrability to Arbitrator Miles. At the arbitration, the APWU maintained that the contractual requirements for separation must be satisfied for Article 12's prohibition to apply and bar Hoang from the grievance process. In support of this argument, the APWU alleged that Hoang's separation was not effected properly during her probationary period because the Postal Service failed to satisfy the procedural requirements set forth in the ELM and incorporated into the National Agreement by Article 19. First, the APWU asserted that the recommendation to separate Hoang was never referred for a final decision to the official having authority to take such action, Postmaster Leonard Napper. Second, the APWU contended that the separation notice given to Hoang failed to provide any conclusions as to the inadequacies of her performance or conduct as required by section 365.326 of the ELM. Based on the Postal Service's alleged failure to comply with these procedural requirements, the APWU argued that Hoang's separation was not effected during her probationary period, and she was therefore entitled to the benefit of the grievance process available to career/non-probationary employees.

Presented only with the question of arbitrability, the arbitrator agreed with the APWU, concluding that he had jurisdiction under the National Agreement to hear challenges to whether the Postal Service had effected the separation of the probationary employee. Construing the relationship between Article 12, Article 19, and the ELM separation procedures, Arbitrator Miles held the grievance to be arbitrable, writing:

> There is no question that Article 12, Section 1 of the Agreement entitles the Postal Service to terminate probationary employees prior to the expiration of their probationary

19

period. However, Article 12 does not stand alone, rather it must be considered in conjunction with all other provisions of the Agreement. Thus, when taking action to separate a probationary employee, the Postal Service must do so in accordance with the provisions of the Agreement and the applicable provisions which are contained in Section 365.32 of the ELM.

J.A. 32.

Regardless of whether we disagree with this conclusion, Arbitrator Miles's ruling was a reasonable construction of the pertinent provisions of the National Agreement. The Miles Award was premised on the interpretation of contract terms, particularly the definition of the term "separate" and its relationship to the balance of the National Agreement. I am therefore unable to reconcile the majority's decision with our limited standard of review. See Misco, Inc., 484 U.S. at 38 (holding that insofar "as the arbitrator is even arguably construing or applying the contract . . ., that a court is convinced he committed serious error does not suffice to overturn his decision."). While the ruling of Arbitrator Miles may not be the only possible interpretation of the National Agreement, it is certainly a plausible one, and therefore must be said to have drawn its essence from the parties' agreement. See Rock-Tenn Co. v. United Paperworkers Int'l Union, 184 F.3d 330, 337 (4th Cir. 1999).

III.

The majority is obviously correct in its assertion that "[p]arties to a collective bargaining agreement get what they bargain for -- no less and no more." Ante at 11. However, the majority's holding today would deny the APWU the benefit of its bargain, by ignoring the contractual obligations of the Postal Service in "separating" probationary employees. At the foundation of the majority opinion is the finding that Hoang is a "probationary employee" attempting to grieve her "separation." In my view, this begs the question, for the issue presented to Arbitrator Miles was whether a "separation," as that term is defined by the National Agreement, actually occurred; and if not, whether an employee who was not properly separated during the course of her probationary period is still afforded "probationary" sta-

20

tus. Construing the relationship between Article 12, Article 19, and the ELM, Arbitrator Miles concluded that before Article 12's bar to the grievance process can apply, there must be a preliminary determination as to whether Hoang was in fact separated in accordance with the National Agreement.

The Miles Award's interpretation of the National Agreement was just that: the construction and application of the contractual language. Even if we disagree with this reading, we should not vacate the Miles Award "on the ground that an arbitrator misread the contract," since the Miles Award is a plausible application of the contract. Misco, 484 U.S. at 38; see also Remmey v. PaineWebber Inc. , 32 F.3d 143, 146 (4th Cir. 1994) (noting that courts are not free to reject an arbitral award simply because "they would have reached a different conclusion if presented with the same facts").

Consistent with the exceedingly deferential standard of review mandated by the Supreme Court, I would hold that the arbitration award in this case drew its essence from the National Agreement, and I would reverse the district court's decision to the contrary. I respectfully dissent.

21