UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

KENNAMETAL, INCORPORATED,
          *Plaintiff-Appellee,*

v.

UNITED STEELWORKERS OF AMERICA,
AFL-CIO CLC; UNITED
STEELWORKERS OF AMERICA, LOCAL
15094-2,
          *Defendants-Appellants.*

No. 03-1775

Appeal from the United States District Court
for the Western District of Virginia, at Abingdon.
James P. Jones, District Judge.
(CA-02-175-1)

Argued: February 26, 2004

Decided: April 19, 2004

Before WILKINS, Chief Judge, and MOTZ and
TRAXLER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Daniel Martin Kovalik, UNITED STEELWORKERS OF
AMERICA, Pittsburgh, Pennsylvania, for Appellants. Charles Preyer
Roberts, III, CONSTANGY, BROOKS & SMITH, L.L.C., Winston-
Salem, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

This case arises from the arbitration of a grievance filed by the United Steelworkers of America, AFL-CIO/CLC, and United Steelworkers of America Local 15094-2 (collectively the "Union") challenging Kennametal, Inc.'s decision to cease matching 401(k) contributions for employees represented by the Union under a collective bargaining agreement ("CBA") between the parties. The arbitrator held that Kennametal's action violated the CBA, but the district court vacated the decision because the arbitrator refused to consider pertinent terms of the benefit plan which had been incorporated into the CBA. *See Kennametal, Inc. v. United Steelworkers of America, AFL-CIO*, 262 F. Supp. 2d 663 (W.D.Va. 2003). We affirm.

I.

In October 1997, Kennametal acquired the parent company of the American Mine Tool Division of Rogers Tool Works, Inc., which was a party to a CBA recognizing the Union as the exclusive bargaining representative of the production and maintenance employees at a manufacturing facility located in Virginia. Kennametal honored the existing CBA, but began negotiations for a new CBA in part because Kennametal wanted its benefit plans to be consistent for all Kennametal employees.

In November 1998, after extensive negotiations, Kennametal and the Union agreed upon a new CBA. Article 17 of the CBA governs the settlement of grievances and the arbitration procedure. Section 17.4 provides that "[t]he Arbitrator shall have jurisdiction only to determine issues, based upon the interpretation of application of this agreement, and he shall be limited to deciding each case on its own merits. No decision shall add to, subtract from, or alter the terms of this agreement." J.A. 56. Section 17.6 provides that:

Matters relating to the Company's Group Insurance Plans, Retirement Plan, and all other employee benefit programs shall be subject to the grievance or arbitration procedure on benefit levels only. Matters pertaining to benefits administration such as claim processing or payment, selection of insurance carriers or administrators, eligibility for coverage, etc., will not be subject to the grievance or arbitration procedures. The parties agree to meet prior to any proposed benefit change to discuss the change. The Company agrees to ensure that any change will result in a benefit that provides a comparable benefit structure to the benefit being replaced.

J.A. 57.

As part of the new CBA, the parties agreed that all employees would be placed under Kennametal's Retirement Plan. Section 20.2 provides that "[t]he retirement savings program, 'Kennametal Thrift Plan,' is a part of the 'Agreement' and will be extended to all eligible employees in the bargaining unit." J.A. 59. Article XI of Kennametal's Thrift Plan document, in turn, provides that Kennametal "reserves the right . . . to amend, modify, suspend or terminate the Plan" and, pursuant to Section 11.020 of that Article, that Kennametal may "discontinue its contributions under the Plan for any reason at any time." J.A. 229.

Effective January 1, 2002, Kennametal amended the Thrift Plan to temporarily cease matching 401(k) contributions for employees and notified its employees of this change. The Union filed a grievance, claiming that the unilateral change violated Section 17.6 of the CBA because Kennametal did not meet with the Union to discuss the proposed benefit change or ensure that the suspension of the matching contribution was replaced with a comparable benefit. In response, Kennametal claimed that the dispute was not arbitrable and that, in any event, it was entitled to make the change under Article XI, Section 11.020 of the Thrift Plan, which was specifically incorporated into and made a part of the CBA.

After unsuccessfully attempting to resolve the matter with Kennametal, the Union demanded arbitration. On August 26, 2002, the arbitrator ruled that the dispute was arbitrable and that Kennametal had

violated the CBA by unilaterally ceasing the matching of 401(k) contributions without complying with section 17.6's requirement of a meeting and comparable benefit. Kennametal filed suit in the district court seeking an order vacating the arbitrator's award, and the Union counterclaimed to enforce the award and for attorney's fees and costs. After both parties moved for summary judgment, the district court ruled that the arbitrator had expressly declined to consider the provisions of the Thrift Plan which had been directly incorporated by reference into the CBA. The district court vacated the award, and directed the parties to submit the grievance to arbitration de novo before a different arbitrator. The Union's subsequent motion for reconsideration was denied and the Union appealed.*

## II.

It is well-settled that our review of an arbitration award "is among the narrowest known to the law." *United States Postal Service v. American Postal Workers Union, AFL-CIO*, 204 F.3d 523, 527 (4th Cir. 2000) (internal quotation marks omitted). "A court sits to 'determine only whether the arbitrator did his job — not whether he did it well, correctly, or reasonably, but simply whether he did it.'" *Id.* (quoting *Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union*, 76 F.3d 606, 608 (4th Cir. 1996)). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987).

Nonetheless, an arbitration award "must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice." *Id.*; *see also Mountaineer Gas Co.*, 76 F.3d at 608; *Island Creek Coal Co. v. District 28*, 29 F.3d 126, 129 (4th Cir. 1994). The arbitrator, therefore, is limited to interpretation and application of the agreement:

---

*In January 2003, Kennametal reinstated matching contributions for all employees. Kennametal chose not to appeal the district court's determination that the dispute was arbitrable.

> [The] award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award. The requirement that the award "draw its essence" from the parties' agreement means that the arbitrator may not ignore the plain language of the contract. When the arbitrator ignores the unambiguous language chosen by the parties, the arbitrator simply fails to do his job.

*See United States Postal Serv.*, 204 F.3d at 527 (internal citations, quotation marks, and alterations omitted). We review the question of whether the arbitrator exceeded the scope of his authority de novo. *See Mountaineer Gas Co.*, 76 F.3d at 608.

Here, the arbitrator found, as a factual matter, that the Union had not received a copy of the Thrift Plan until after the CBA was agreed-upon and ratified by the members. From this, the arbitrator concluded that "it could not be found that the Union had agreed to the document" and "that for arbitrability purposes, the Union was not bound by the Thrift Plan provisions, which gave the Company discretion to terminate or modify participation in the plan." J.A. 23. Consequently, the arbitrator ruled, the provisions of Article XI, Section 11.020 of the Thrift Plan "d[id] not bear on the disposition of the merits of the Grievance." J.A. 23.

Kennametal contends that the arbitrator exceeded his authority by rewriting the CBA to exclude the terms of the Thrift Plan, despite the Thrift Plan explicitly being made "part of the 'Agreement'". J.A. 59. Thus, Kennametal argues that the district court properly vacated the award because the award did not "draw its essence" from the contract.

The district court held that the arbitrator's refusal to even consider the language of the Thrift Plan required that the award be set aside. Specifically, the district court held that the arbitrator was not at liberty to conclude that Kennametal's unilateral cessation of matching contributions violated certain terms of the CBA by ignoring other terms of the agreement simply because he found, as a fact, that the Union representative did not obtain or read the Thrift Plan. "The Thrift Plan was expressly made part of the CBA," the district court noted, "and by

ignoring its contents the arbitrator simply failed to do his job." *Kennametal*, 262 F. Supp. 2d at 671 (internal quotation marks and alterations omitted).

We agree. Although the circumstances under which a court can vacate an arbitrator's decision are extremely limited, they are present in this case. "Underlying judicial deference to arbitral awards is the principle that the terms of the parties' agreement are controlling. This same principle requires courts to vacate awards when an arbitrator exceeds his authority under a collective bargaining agreement." *United States Postal Serv.*, 204 F.3d at 527. Although "courts have no business overruling [an arbitrator] because their interpretation of the contract is different from his," *id.* (internal quotation marks omitted), the courts must likewise refuse enforcement of an award arrived at after the arbitrator has expressly declined to consider a portion of the agreement in deciding whether the employer has violated its terms. Here, the arbitrator's words reveal that he intentionally ignored pertinent portions of the CBA as incorporated and agreed-to by the parties. Although we express no opinion as to what weight this portion might have, under the unique circumstances of this case, we believe the award must be vacated and the matter submitted to arbitration anew.

### III.

For the foregoing reasons, the decision of the district court is affirmed.

*AFFIRMED*