# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 17, 2008        Decided January 23, 2009

No. 08-5056

UNITED STATES POSTAL SERVICE,
APPELLEE

v.

AMERICAN POSTAL WORKERS UNION,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 06cv00793)

*Darryl J. Anderson* argued the cause and filed the briefs for appellant.

*Fred E. Haynes*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Jeffrey A. Taylor*, U.S. Attorney, *R. Craig Lawrence*, Assistant U.S. Attorney, and *Teresa A. Gonsalves*, Appellate Counsel, U.S. Postal Service.

Before: SENTELLE, *Chief Judge*, and GRIFFITH, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: This case involves an action brought in District Court by the United States Postal Service ("USPS" or "Postal Service"), under the Postal Reorganization Act, 39 U.S.C. § 1208(b), to vacate an arbitrator's award granting a grievance filed by the American Postal Workers Union ("APWU" or "the union"). The union's grievance was filed under a collective bargaining agreement ("CBA") between USPS and APWU, and it challenged the dismissal of an employee, Lorraine Daliessio, who had been employed by USPS. The Postal Service argued to the arbitrator that, because Daliessio was a probationary employee when separated from employment, she could be terminated without cause and without access to the grievance and arbitration procedures available to nonprobationary employees under the parties' CBA.

The parties agreed that the arbitrator had the authority to decide whether the grievance was arbitrable under the CBA. The arbitrator ruled that Daliessio's grievance was arbitrable, because the grievant was not separated during her probationary period. The arbitrator reached this conclusion in part because the Postal Service had failed to give proper notice as required by the USPS Employee and Labor Relations Manual ("ELM") when it purported to separate Daliessio. Finding no just cause, the arbitrator ordered Daliessio reinstated with seniority and back pay.

The District Court vacated the award. *U.S. Postal Serv. v. Am. Postal Workers Union AFL-CIO*, 536 F. Supp. 2d 12 (D.D.C. 2008). The District Court agreed with USPS that, because controlling arbitral precedent "expressly disallows probationary employees access to grievance procedures for challenges to a separation based on non-compliance with [the] ELM," *id*. at 17, the arbitrator's award "exceeded the authority granted by the [parties'] National Agreement." *Id.* On appeal, APWU argues that the District Court erred in failing to adhere

to the commands of *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960), and its progeny, governing judicial review of arbitration awards. The *Enterprise Wheel* line of cases, which controls the disposition of this case, emanates from section 301 of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185(a) ("LMRA").

> Section 1208(b) of the Postal Reorganization Act, 39 U.S.C. § 1208(b), gives federal district courts jurisdiction over suits for violations of contracts between the United States Postal Service and unions representing postal employees. Section 1208(b) is virtually identical to section 301(a) of the [LMRA], which provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees . . . may be brought in any district court of the United States having jurisdiction of the parties." [*Id.*] We have previously applied cases interpreting section 301(a) in determining the scope of section 1208(b).

*U.S. Postal Serv. v. Nat'l Rural Letter Carriers' Ass'n*, 959 F.2d 283, 286 (D.C. Cir. 1992) (second alteration in original).

Under *Enterprise Wheel*, a court may not vacate an arbitrator's award if it "draws its essence" from the parties' collective bargaining agreement. 363 U.S. at 597. It does not matter whether the arbitrator's decision on the merits appears to be misguided. "When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's 'improvident, even silly, factfinding' does not provide a basis for a reviewing court to refuse to enforce the award." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 39 (1987)). In other words, the Supreme Court has made it abundantly clear that "a federal court may not overrule an arbitrator's decision simply because the court believes its own interpretation of the contract

would be the better one." *W.R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber, Cork, Linoleum & Plastic Workers of Am.,* 461 U.S. 757, 764 (1983). Because the arbitrator's award in this case drew its essence from the parties' CBA, the award cannot be overturned by a federal court. Accordingly, we reverse the judgment of the District Court and remand the case for judgment to be entered in favor of APWU.

## I. BACKGROUND

### A. *The National Agreement*

The APWU and USPS are parties to a collective bargaining agreement covering employees at postal facilities throughout the United States. The instant dispute is governed by the CBA that was in effect between 1994 and 1998. *See* Collective Bargaining Agreement Between American Postal Workers Union, AFL-CIO and United States Postal Service, Nov. 21, 1994 – Nov. 20, 1998 (the "National Agreement"), *reprinted in* Joint Appendix ("J.A.") 30.

Article 15 of the National Agreement sets forth the parties' grievance-arbitration procedure. A grievance under the CBA is defined as a complaint by an employee or the union that involves the interpretation, application of, or compliance with the provisions of the contract. National Agreement, Art. 15.1, J.A. 43. In the event that a grievance is not resolved under the contractual grievance procedure, the matter may be submitted to a neutral arbitrator jointly chosen by the parties. *Id.* at Art. 15.2, J.A. 43-46. Cases involving interpretive issues of general application under the National Agreement are arbitrated at the national level, and the resulting awards establish controlling precedent on the meaning of the National Agreement. *Id.* at Art. 15.5, J.A. 47-49. "Area Level Arbitration" cases, as distinguished from "National Panel" cases, are final and binding only on the parties to the individual case. *Id.*

5

The ELM also contains provisions relating to the terms and conditions of employment of employees covered by the CBA. However, unlike the CBA, the ELM is not a product of collective bargaining between APWU and USPS. The Postal Service may add to and amend the terms of the ELM, but the union must be notified of any changes and it may challenge them on the ground that they conflict with the terms of the National Agreement or are otherwise unfair, unreasonable, or inequitable. *Id.* at Art. 19, J.A. 74. In addition, the parties have agreed that the provisions of the ELM "shall be continued in effect" unless changed in accordance with procedures set forth in Article 19. *Id.*

The ELM establishes, *inter alia*, detailed procedures covering the separation of probationary employees. Under the terms of the ELM, an appointing official must "notify[] the employee in writing why she or he is being terminated and the effective date of the action," along with "the appointing official's conclusions as to the inadequacies of performance or conduct." ELM 365.326, *reprinted in* J.A. 173. The ELM requires that the notice of termination be given to the employee before the end of the probationary period. *Id.* at 365.327, J.A. 174.

Under the CBA, new employees are considered probationary for the first 90 days of employment. Pursuant to Article 12 of the National Agreement, USPS may separate employees during their probationary period without just cause. The CBA provides:

> The probationary period for a new employee shall be ninety (90) calendar days. The Employer shall have the right to separate from its employ any probationary employee at any time during the probationary period and these probationary employees shall not be permitted access to the grievance procedure in relation thereto.

National Agreement, Art. 12.1.A, J.A. 31.

For a time, USPS and APWU officials disagreed over whether an employee who was separated during his or her probationary period could challenge the employer's action under the CBA grievance and arbitration procedures. The union contended that separations must comply with ELM procedures and that claims of noncompliance could be brought to arbitration. The Postal Service disagreed, contending that Article 12.1.A made it clear that probationary employees who were separated had no access to the CBA grievance and arbitration procedures. In 2000, in a USPS action seeking to vacate an arbitrator's award, the Fourth Circuit agreed with the Postal Service that the CBA barred all arbitral challenges to the separation of probationary employees. *See U.S. Postal Serv. v. Am. Postal Workers Union, AFL-CIO*, 204 F.3d 523 (4th Cir. 2000).

The matter finally came to a head in 2001, when National Arbitrator Shyam Das presided over an arbitration proceeding that concerned the meaning of Article 12.1.A. In particular, Arbitrator Das was asked to decide what claims, if any, a probationary employee could pursue under the parties' CBA grievance and arbitration procedures to challenge a separation action taken within the employee's probationary period. *See In re Postal Serv., Am. Postal Workers Union and Nat'l Ass'n of Letter Carriers*, Case No. Q98C-4Q-C 99251456 (Nat'l Award, Sept. 10, 2001) (Das, Arb.) ("Das Award"), *reprinted in* J.A. 69. Arbitrator Das concluded that probationary employees may not challenge separations on the grounds of alleged noncompliance with ELM procedures. However, the Das Award also made clear that the union may arbitrate the question of *whether* an employee's separation occurred during the probationary period. On this second point, Arbitrator Das noted that "Article 12.1.A has no application if the separation action does not occur during the probationary period." *Id.* at J.A. 92.

Arbitrator Das also noted that Article 12 does not define what constitutes a separation under the CBA. To fill this definitional void, he looked to the ELM and ruled that

> [the] definition [of "separation"] is provided . . . in Section 365.11 of the ELM which states: "Separations are personnel actions that result in employees' being removed from the rolls of the Postal Service."

*Id*. at J.A. 88.

The parties agree that the Das Award provides the controlling arbitral precedent regarding the meaning of Article 12.1.A, and that the Das decision is binding on the parties to this dispute.

## B.  *Facts and Proceedings Below*

The facts as reported in the arbitrator's award, the District Court's decision, and the record on appeal are straightforward and largely undisputed.  Lorraine Daliessio was hired on November 22, 1997, as a part-time flexible mark-up clerk in the Computer Forwarding unit at the Philadelphia Pennsylvania Post Office. Decl. Of Vivian T. Barnett, *reprinted in* J.A. 258 at ¶¶ 1, 4. Daliessio's 90-day probationary period was scheduled to end on February 19, 1998.  *Id*. at ¶ 4.  On December 30, 1997, at her 30-day evaluation, Daliessio's supervisor, Vivian Barnett, informed her that she had been rated "unacceptable" in two key performance areas:  work quality and work quantity.  *Id*. at ¶ 5. On January 30, 1998, Daliessio's supervisor gave her an unsatisfactory rating and checked the box on an evaluation form indicating that she would not recommend Daliessio for retention or rehire.  Daliessio declined to sign the form.  Her supervisor told her to clean out her locker, turn in her I.D., and go home. Daliessio did so, and did not return to work.  *Id*. at J.A. 259 ¶¶ 7-8.

On February 4, 1998, Supervisor Barnett sent a letter to the Manager of Labor Relations asking that action be taken to remove Daliessio from the employment rolls effective January 30, 1998. *Id*. at J.A. 260 ¶ 9. On February 20, 1998, one day after Daliessio's probationary period ended, the Manager of Labor Relations sent a letter to Daliessio stating: "This will confirm your separation from the Postal Service [as] a result of lack of proficiency." Notice of Separation, Feb. 20, 1998, *reprinted in* J.A. 164-65. The union filed a grievance to challenge the separation. The grievance was denied by the Postal Service and appealed to arbitration by the union. Appeal to Arbitration, Sept. 14, 1998, *reprinted in* J.A. 156.

Arbitrator Loeb heard the grievance in late 2005 and issued a decision on January 28, 2006. *In re Postal Serv. and Am. Postal Workers Union*, No. C94C-4C-D 98076813 (Reg'l Award, Jan. 28, 2006) (Loeb, Arb.) ("Loeb Award"), *reprinted in* J.A. 52. The parties agreed that, under the Das Award, Arbitrator Loeb could properly decide whether the grievant was separated during her probationary period. The parties also agreed that if Loeb determined that the grievant was not separated within her probationary period, her grievance on the merits was arbitrable. After explaining the controlling principles in the Das Award and then making findings regarding Daliessio's dismissal, Arbitrator Loeb concluded that Daliessio's claim was arbitrable because she was not separated until after her probationary period. Loeb found that the grievant's purported "separation" consisted of USPS sending her home and telling her not to come back to work. However, in Arbitrator Loeb's view, "[n]either the recommendation nor the order not to return to work terminated the Grievant. The supervisor, her manager and the Manager of Labor Relations all recognized that was the case by their actions." *Id*. at J.A. 66.

After concluding that the grievant was not separated during her probationary period, Arbitrator Loeb went on to discuss the ELM. He observed, *inter alia*, that because the ELM

> declare[s] that separation must take place during the employee's probationary period and [sets] the conditions by which it must terminate the employee, the Employer cannot prohibit the Grievant from accessing the grievance procedure on the basis of Article 12 to allege that she was not terminated during her probation.

*Id*. at J.A. 67. In the end, Arbitrator Loeb concluded: "The plain fact of the matter is that the Employer failed to terminate the Grievant, as that term is understood in Article 12[,] within her probationary period." *Id.* at J.A. 68. Finding no just cause for dismissal, the arbitrator ordered Daliessio reinstated with seniority and back pay.

The District Court granted summary judgment to USPS and vacated the Loeb Award. *See U.S. Postal Serv.*, 536 F. Supp. 2d 12. Characterizing the issue in the case as "whether APWU's grievance challenging Daliessio's 'termination' was arbitrable," *id*. at 16, the District court held that the arbitrator's decision "exceeded the authority granted by the National Agreement." *Id.* at 17.

> Because the Das Award . . . expressly disallows probationary employees access to grievance procedures for challenges to a separation based on non-compliance with ELM Section 365.32, Loeb's reliance on those procedures to determine that Daliessio was not terminated within the probationary period is misplaced. In fact, it runs directly counter to Article 12.1.A as interpreted by the Das Award.

*Id*. at 17-18. Holding that "[t]his flawed analysis constitutes . . . manifest disregard of the National Agreement," the District Court vacated the arbitration award. *Id*. at 18.

## II. ANALYSIS

### A. *Standard of Review*

"Our review of a district court's decision on a summary judgment motion is *de novo*. We will affirm the district court's grant of summary judgment to [the Postal Service] only if [USPS] has demonstrated in view of all the facts – and the reasonable inferences drawn therefrom in the light most favorable to [the union], the non-moving party – that 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' FED. R. CIV. P. 56(c)." *Teamsters Local Union No. 61 v. United Parcel Serv.*, 272 F.3d 600, 603 (D.C. Cir. 2001) (citation omitted).

"Unless the parties clearly and unmistakably provide otherwise," "the question of arbitrability – whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance – is undeniably an issue for judicial determination." *AT&T Techs., Inc. v. Comm'ns Workers of Am.*, 475 U.S. 643, 649 (1986). It is undisputed in this case that the parties agreed to present the question of arbitrability to the arbitrator. Therefore, judicial review of the arbitrator's award here is strictly limited pursuant to the Supreme Court's decision in *Enterprise Wheel* and its progeny.

We are only called upon to determine whether the arbitrator's award "draws its essence from the collective bargaining agreement." *Enterprise Wheel*, 363 U.S. at 597. An arbitrator may not, of course, "dispense his own brand of industrial justice." *Id.* However, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Misco*, 484 U.S. at 38; *see also Garvey*, 532 U.S. at 509 ("Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests

on factual errors or misinterprets the parties' agreement.") (citation omitted). So long as the arbitrator's award draws its essence from the parties' agreement, the arbitrator has the right to be wrong and a court may not second-guess his decision.

## B. *The Arbitrator's Award in This Case*

There is some force to the Postal Service's argument that, on the merits, Arbitrator Loeb's Award is questionable. It is undisputed that the Das decision establishes the controlling law under the parties' CBA concerning the meaning of Article 12.1.A. As noted above, Arbitrator Das ruled that "Article 12.1.A denies a probationary employee access to the grievance procedure to challenge his or her separation on the grounds of alleged noncompliance with the procedures in Section 365.32 of the ELM." Das Award, J.A. 93. The Postal Service contends that Arbitrator Loeb was faithless to this principle when he cited the ELM in determining that Daliessio was improperly separated.

Although the Postal Service may have an arguable ground to disagree with the arbitrator's decision, this is no basis for a court order vacating the Loeb Award. The question before this court is not whether the arbitrator's decision is wrong on the merits, but whether his decision draws its essence from the parties' CBA. We hold that it does.

Arbitrator Loeb was asked to construe Article 12.1.A of the National Agreement. In so doing, he was plainly aware that he was bound by the Das Award. The Loeb Award discusses the Das decision in some detail, focusing in particular on Das's holdings regarding when a probationary employee may permissibly challenge her separation. After reviewing the CBA and the relevant arbitral precedent, Arbitrator Loeb first held that:

> In view of those authorities, the undersigned must conclude that the Union has a right to challenge the Grievant's

> termination through the grievance procedure. . . . Regardless of how the Union chooses to characterize the nature of the grievance or how badly it feels that the Service transgressed the requirements in Section 365.327 of the ELM, the issue before the Arbitrator is not the process the Service employed when it terminated the Grievant, but whether she was discharged during her probationary period. The answer is that she was not.

Loeb Award, J.A. 66.

Loeb then recited findings of fact in support of his conclusion that the grievant had not been terminated during her probationary period:

> The record is clear that the Grievant was advised on January 30, 1998 that her work was unsatisfactory and that her supervisor would not recommend her retention. She memorialized those comments on the Form 1750 by checking the box indicating that she would not recommend the Grievant be retained by the Service. The Grievant claimed that she never saw that section of the evaluation form, but in view of her subsequent EEO statement her claim is not credible. The Grievant's credibility, however, is not an issue in this case. What matters is what the Postal Service did which is sent her home and told her not to come back to work. Neither the recommendation nor the order not to return to work terminated the Grievant. The supervisor, her manager and the Manager of Labor Relations all recognized that was the case by their actions. The supervisor and the manager by requesting that Labor Relations separate the Grievant and Labor Relations by sending a letter to that effect to the Grievant. The letter, which was dated February 20, 1998, was sent by certified mail to the Grievant's address of record. She effectively evaded receipt of the letter by refusing to claim it. Thanks to her tactics it was not until late March that the Postal

> Service finally constructively delivered the letter to the Grievant's address of record. By then it was too late.

*Id*. at 66-67. These findings are plainly adequate to support Loeb's judgment. It is significant that Loeb's critical findings of fact do not rest on the employer's compliance or noncompliance with the ELM. Rather, Loeb simply looked at the record and decided that, as he viewed the facts, the employee was not effectively terminated until after her probationary period.

After discussing the applicable contract provision, making it clear that he understood and meant to rely on the principles set forth in the Das Award, and reciting his critical findings of fact in support of his judgment, Arbitrator Loeb then went on to discuss the ELM. It is at this point that the opinion engenders great confusion. The Loeb Award states that,

> [h]ad the Service not drafted Sections 365.323 and .326 of the ELM, it would not have mattered when the Employer sent the letter out or when the Grievant received it as Article 12, Section 1.A. only states that if the Service intends to terminate a probationary employee it must do so during his probationary period. The ELM radically altered that scheme . . . provid[ing] the manner in which separation must occur.

*Id.* at 67. This portion of the Loeb Award, at least if read in isolation, seems to be at odds with Das's ruling that a "challenge to the validity of the procedures followed in effecting a separation is barred by the broad prohibitory language of Article 12.1.A." Das Award, J.A. 92.

What is most noteworthy, however, is that, when Loeb's opinion is read as a whole, it is clear that Arbitrator Loeb obviously understood that he was bound by Arbitrator Das's decision. It is also clear that Loeb did not mean to say that a probationary employee may gain access to the grievance

procedure to challenge his or her separation solely on the grounds of alleged noncompliance with ELM procedures. Rather, he parroted the command from the Das Award: "A dispute as to whether or not the Postal Service's action separating the employee occurred during his or her probationary period is arbitrable because that is a precondition to the applicability of Article 12.1.A." Loeb Award, J.A. 66 (quoting Das Award, J.A. 93).

Loeb did not hold that the employer *must* adhere to ELM procedures; rather, he seems to suggest nothing more than that the factors listed in the ELM are among those that might be relevant in deciding whether an employee has been separated within her probationary period. And, as noted above, before he discussed the ELM, Loeb listed the facts that he found to be controlling and none of these facts had to do with any alleged breach of the ELM by USPS.

It is hardly surprising that Loeb looked to the ELM for affirmation, because Das also looked to the ELM in deciding the meaning of "separation" under Article 12. Das said:

> The Unions also are correct in pointing out that Article 12 does not define what constitutes a separation. That definition is provided, however, in Section 365.11 of the ELM which states:
>
> > Separations are personnel actions that result in employees' being removed from the rolls of the Postal Service.

Das Award, J.A. 88. Furthermore, the Das decision does not say that an arbitrator cannot look to the ELM for guidance. Rather, what Das says is that probationary employees may not pursue an action in arbitration based solely on a claim that the employer failed to follow the "procedures" under the ELM. Das Award, J.A. 90. Loeb never assumed that the issue in this case was whether the Postal Service failed to follow ELM procedures.

Rather, Loeb clearly stated that the issue before him was whether the grievant was terminated during her probationary period:

> Regardless of how the Union chooses to characterize the nature of the grievance or how badly it feels that the Service transgressed the requirements in Section 365.327 of the ELM, the issue before the Arbitrator is not the process the Service employed when it terminated the Grievant, but whether she was discharged during her probationary period.

Loeb Award, J.A. 66. Nothing in the Das Award barred Loeb from addressing the issue of whether the grievant was discharged during her probationary period; and nothing in Das's decision barred Loeb from looking to the ELM to gain some guidance on how to determine whether an employee was in fact terminated during her probationary period.

In the end, the most that can be said is that the Loeb Award is somewhat confusing in its gratuitous observations about the ELM and arguably dubious in its judgment on the merits. But there can be no doubt whatsoever that the Loeb Award draws its essence from the parties' agreement and the Das Award. It does not matter whether we agree with Loeb's reasoning or judgment, so long as we find that his award rested on his construction of the CBA. *See Madison Hotel v. Hotel & Rest. Employees, Local 25, AFL-CIO*, 144 F.3d 855, 859 (D.C. Cir. 1998) (en banc) ("[I]t is enough to sustain the award that the arbitrator, permissibly drawing on the sources just mentioned as well as on the explicit provisions of the contract itself, purported to be interpreting the contract in rendering his final decision.") (internal quotation omitted).

As noted above, under *Enterprise Wheel* and its progeny, the arbitrator has a right to be wrong in his interpretation of the parties' CBA. The parties bargained for Arbitrator Loeb to be the reader of their CBA. In other words, "the parties have

necessarily bargained for the arbitrator's interpretation of the [arbitral] law and are bound by it." *Am. Postal Workers Union v. U.S. Postal Serv.*, 789 F.2d 1, 6 (D.C. Cir. 1986). Arbitrator Loeb did not "render[ ] a judgment based on external legal sources, wholly without regard to the terms of the parties' contract." *Id.* at 8. Nor is he accused of any misconduct. *Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 52 F.3d 359, 362 (D.C. Cir. 1995) (stating that an arbitrator influenced by bribery or fraud could be viewed as "dispensing his own brand of industrial justice"). Rather, he looked to and relied on the proper sources of his authority, so it cannot be said that he "dispense[d] his own brand of industrial justice." *Enterprise Wheel*, 363 U.S. at 597. USPS and the APWU authorized Arbitrator Loeb "to give meaning to the language of the agreement." *Misco*, 484 U.S. at 38. Were this court to vacate the arbitrator's award, we would simply be substituting our own interpretation of Article 12.1.A and the Das decision for Arbitrator Loeb's. We have no authority to do this.

## C. *The Decision of the Fourth Circuit Has No Preclusive Effect in This Case*

Finally, USPS contends that, because the decision by the Fourth Circuit in *United States Postal Serv. v. American Postal Workers Union, AFL-CIO*, 204 F.3d 523, conclusively determined the same issues the Loeb Award purported to address in a proceeding involving the same parties, collateral estoppel precludes enforcement of the Loeb Award. USPS Br. at 34. We disagree.

"Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Novak v. World Bank*, 703 F.2d 1305, 1309 (D.C. Cir. 1983) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). However, "[c]ollateral estoppel is generally inappropriate when the issue is one of law

and there has been a change in the legal context after the first decision." *Pharm. Care Mgmt. Ass'n v. District of Columbia*, 522 F.3d 443, 447 (D.C. Cir. 2008); *see also Montana v. United States*, 440 U.S. 147, 161 (1979) (observing that collateral estoppel has no application when there has been change in the legal context). The legal context has changed in this case, because the contractual principle applied by the Fourth Circuit is not the same as the principle subsequently announced by Das and applied by Loeb.

The Fourth Circuit said that the parties' agreement "precludes an arbitrator from determining whether a probationary employee was actually separated in the first place. . . . In other words, so long as the matter involves probationary employees and the question of separation, no grievance may be brought." *U.S. Postal Serv*., 204 F.3d at 528. Arbitrator Das completely rejected this construction of the contract when he held that:

> A dispute as to whether or not the Postal Service's action separating the employee occurred during his or her probationary period is arbitrable because that is a precondition to the applicability of Article 12.1.A.

Das Award, J.A. 93. Arbitrator Loeb followed Das, as he was authorized to do.

In short, the Fourth Circuit decision is not in the least bit binding in this case. The parties bargained for Das's interpretation of the contract, not the Fourth Circuit's contrary construction, and Loeb followed Das. *See Am. Postal Workers Union*, 789 F.2d at 6-7 ("Since the arbitrator is the 'contract reader,' his interpretation of the law becomes part of the contract and thereby part of the private law governing the relationship between the parties to the contract.").

### III.  CONCLUSION

For the reasons stated above, the judgment of the District Court is reversed.  The case is remanded to the District Court with instructions to enter judgment for the appellant.