# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 22, 2009  Decided December 18, 2009

No. 08-5467

NATIONAL POSTAL MAIL HANDLERS UNION, A DIVISION OF
THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA,
APPELLANT

v.

AMERICAN POSTAL WORKERS UNION AND UNITED STATES
POSTAL SERVICE,
APPELLEES

———

Consolidated with 08-5487

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:06-cv-01986-JR)

———

*Ray E. Donahue*, Special Assistant U.S. Attorney, argued
the cause for appellant United States Postal Service. With
him on the briefs was *R. Craig Lawrence*, Assistant U.S.
Attorney. *Claire M. Whitaker*, Assistant U.S. Attorney,
entered an appearance.

*Ramya Ravindran* argued the cause for appellant National Postal Mail Handlers Union.  With  her on the briefs was *Andrew D. Roth*.

*Anton G. Hajjar* argued the cause and filed the brief for appellee American Postal Workers Union.

Before: SENTELLE, *Chief Judge*, and GRIFFITH and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH, with whom *Circuit Judge* GRIFFITH joins.

Dissenting Opinion filed by *Chief Judge* SENTELLE.

KAVANAUGH, *Circuit Judge*:  This is an arbitration case. Two unions of postal workers – the American Postal Workers Union and the National Postal Mail Handlers Union – disagreed over which union was entitled to perform certain work at a U.S. Postal Service facility in Oakland.  The Postal Service assigned the tasks to NPMHU's mail handlers. According to APWU, that assignment contravened a 1979 Postal Service directive regarding allocation of work.  APWU brought the matter to arbitration and prevailed in the arbitration proceeding.

NPMHU then sued in federal court to overturn the arbitrator's decision.  NPMHU claimed, in particular, that the arbitrator erred in finding the dispute arbitrable under the parties' contract.  Applying the extremely deferential standard of review for labor arbitration decisions, the District Court upheld the arbitrator's decision on arbitrability even though it was, in the court's words, "probably erroneous."  578 F. Supp. 2d 160, 162 (D.D.C. 2008).  We too acknowledge that the arbitrator probably erred as a matter of contract

interpretation. Yet in light of the deference courts must afford to a labor arbitrator's contract interpretation – including an arbitrator's decision on arbitrability where, as here, the parties agree to present that issue to the arbitrator – we agree with the District Court that we must uphold the arbitrator's decision in this case. We therefore affirm the judgment of the District Court.

I

A

In 1979, the Postal Service issued a directive allocating responsibility for various mail processing functions between two crafts of postal employees: clerks and mail handlers. The American Postal Workers Union represents clerks, and the National Postal Mail Handlers Union represents mail handlers. We will refer to those unions as APWU and NPMHU.

In 1992, APWU, NPMHU, and the Postal Service agreed on how to resolve disputes over which union should perform certain work (what the Agreement refers to as "jurisdictional disputes"). Under that 1992 Agreement, the parties refer disputes over work assignments to a Local Dispute Resolution Committee that includes representatives of the three parties. If the parties deadlock at that local level, an aggrieved party may appeal to a Regional Dispute Resolution Committee. If deadlock persists, an aggrieved party may appeal to "final and binding" arbitration before an agreed-upon arbitrator.

The 1992 Agreement also provides: "Effective with the signing of this Agreement, no new disputes will be initiated at the local level by either union challenging jurisdictional work assignments in any operations *as they currently exist*. Except

4

as otherwise specifically provided . . . all local craft jurisdictional assignments which are not already the subject of a pending locally initiated grievance will be deemed as a proper assignment for that facility." J.A. 100 (emphasis added).

B

In 2001, a dispute arose over which union was responsible for scanning foreign mail on the loading dock at the U.S. Postal Service's Oakland International Service Center. At the time, mail handlers (represented by NPMHU) performed that work. APWU filed two grievances claiming that clerks, not mail handlers, should perform the tasks in question. The parties referred APWU's grievances to the Local Dispute Resolution Committee, but the committee was unable to agree on a resolution. The parties next referred the issue to a Regional Dispute Resolution Committee; again, no resolution ensued.

APWU then appealed both grievances to arbitration. Before the arbitrator, NPMHU and the Postal Service maintained that the grievances were not arbitrable because (i) they concerned an assignment of work that had initially been made before 1992 and (ii) the parties' 1992 Agreement barred grievances about such pre-1992 assignments.

The arbitrator determined that the dispute was arbitrable. He read the 1992 Agreement to incorporate a "continuing violations" theory under which he could assess the appropriateness of certain pre-1992 assignments to the extent they continued post-1992. The arbitrator then addressed the merits and ruled in favor of APWU, concluding that the Postal Service had improperly assigned the work in question to mail handlers rather than to clerks.

NPMHU filed suit under 39 U.S.C. § 1208(b) and sought to have the arbitrator's award vacated on the ground that the arbitrator had erred in finding the dispute arbitrable. NPMHU contended that arbitration was not available to resolve disputes over work assignments that had initially been made before 1992. The Postal Service agreed with NPMHU that the arbitrator had erred on the arbitrability issue.

The District Court opined that the arbitrator's decision on arbitrability was "probably erroneous." 578 F. Supp. 2d 160, 162 (D.D.C. 2008). But the court nonetheless granted summary judgment to APWU. Applying the courts' deferential standard of review of labor arbitration decisions, the court found no basis to disturb the arbitrator's determination that the dispute was arbitrable. *Id.* at 163. NPMHU and the Postal Service appeal; our review is *de novo*. *See U.S. Postal Serv. v. Am. Postal Workers Union*, 553 F.3d 686, 692 (D.C. Cir. 2009).

II

A

Section 1208(b) of Title 39 authorizes federal district courts to hear suits "for violation of contracts between the Postal Service and a labor organization representing Postal Service employees, or between any such labor organizations." The Postal Service and a postal workers' union may of course agree to arbitration as a means to efficiently resolve contractual disputes. Section 1208(b) does not supply a standard for judicial review of arbitration decisions. We have held, however, that the standard for judicial review of arbitration awards in the postal context is the same as the standard articulated by the Supreme Court for judicial review

of labor arbitration awards under § 301(a) of the Labor-Management Relations Act of 1947. *See U.S. Postal Serv. v. Am. Postal Workers Union*, 553 F.3d 686, 689 (D.C. Cir. 2009) (same standard applies because statutes are "virtually identical") (quoting *U.S. Postal Serv. v. Nat'l Rural Letter Carriers' Ass'n*, 959 F.2d 283, 286 (D.C. Cir. 1992)).

The Supreme Court has long applied a very deferential standard for judicial review of labor arbitration decisions. In the foundational case, the Court ruled that a labor arbitrator's decision must be upheld so long as it "draws its essence from the collective bargaining agreement." *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960). That standard is met, the Court explained, if the arbitrator "premise[d] his award on his construction of the contract." *Id.* at 598.

On several occasions, the Supreme Court has reiterated and reinforced that deferential standard of review for labor arbitration decisions. Most recently and perhaps most emphatically, in *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504 (2001), the Court stated that courts "are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." *Id.* at 509. Sending a clear message to federal courts about their proper role in labor arbitration matters, the Supreme Court did not mince words or sugar-coat the point: If an arbitrator is "even arguably construing or applying the contract and acting within the scope of his authority," then a court may not overturn his decision, even if the court is convinced the arbitrator committed "serious error." *Id.* (quoting *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62 (2000)). Where "no dishonesty is alleged," a court may vacate a labor arbitration award only if the arbitrator "strays

from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice.'" *Id.* (quoting *Enter. Wheel*, 363 U.S. at 597). *See also United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36-38 (1987); *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986).

In short, the relevant question under the Supreme Court's precedents is not whether the arbitrator erred – or even seriously erred – in interpreting the contract. Rather, the question is whether the arbitrator was "even arguably construing or applying the contract." *Garvey*, 532 U.S. at 509 (quoting *E. Associated*, 531 U.S. at 62). Courts do not review the substantive reasonableness of a labor arbitrator's contract interpretation. *See id.*; *see also* Harry T. Edwards, *Judicial Review of Labor Arbitration Awards: The Clash Between the Public Policy Exception and the Duty To Bargain*, 64 CHI.-KENT L. REV. 3, 3-8 (1988). This extraordinarily deferential standard is essential to preserve the efficiency and finality of the labor arbitration process. These critical principles, which can elude parties who sometimes quixotically seek to overturn labor arbitration decisions, guide our approach to labor arbitration generally and to this case in particular.

B

Before applying those bedrock principles to this dispute, we must address one additional point. The Supreme Court's deferential standard of judicial review applies not just to a labor arbitrator's determination on the *merits*, but also to the arbitrator's threshold decision that the dispute was *arbitrable*, at least so long as the parties agreed contractually or by consent to present the question of arbitrability to the arbitrator. *See AT&T Techs.*, 475 U.S. at 649; *U.S. Postal Serv.*, 553 F.3d at 692-93. If, on the other hand, an arbitration

agreement does not say who is to decide the question of arbitrability and the parties do not otherwise consent to arbitration of that question, then arbitrability is an issue for *de novo* judicial determination. *See AT&T Techs.*, 475 U.S. at 649; *Madison Hotel v. Hotel & Rest. Employees, Local 25, AFL-CIO*, 144 F.3d 855, 857 n.1 (D.C. Cir. 1998) (en banc).

The parties in this case agree that, under the contract, the issue of arbitrability was for the arbitrator to decide. Therefore, as the parties further agree, our review of the arbitrator's decision on arbitrability in this case is governed by the deferential standard articulated by the Supreme Court for judicial review of labor arbitration decisions.

C

Applying the relevant standard articulated by the Supreme Court, we must ascertain whether the arbitrator in this matter was "even arguably construing or applying the contract" when he found the dispute arbitrable. *See Garvey*, 532 U.S. at 509 (quoting *E. Associated*, 531 U.S. at 62).

The parties' 1992 Agreement generally barred arbitration of disputes over work assignments that were initially made before 1992, unless a grievance was already pending as of the time of the Agreement. The Agreement thus imposed a statute-of-limitations-like bar on arbitration of grievances relating to pre-1992 work assignments.

The Oakland dispute concerned an assignment of certain duties to mail handlers that was initially made before 1992. APWU had not filed a grievance by the time the parties entered the 1992 Agreement. Therefore, the arbitrator should have ruled that the grievances brought by APWU were not arbitrable.

The arbitrator nonetheless found the dispute arbitrable. The arbitrator concluded that the parties could challenge work assignments initially made before 1992 if those assignments continued after 1992. According to the arbitrator, the contract language must be construed in light of the common-law "continuing violations" doctrine. In support of that construction of the contract, the arbitrator relied on and quoted from a respected arbitration treatise: "Many arbitrators have held that 'continuing' violations of the agreement (as opposed to a single isolated and completed transaction) give rise to 'continuing' grievances in the sense that the act complained of may be said to be repeated from day to day – each day there is a new occurrence . . . ." J.A. 184 (quoting FRANK ELKOURI & EDNA ASPER ELKOURI, HOW ARBITRATION WORKS 152-53 (3d ed. 1973)). The treatise further explains that grievances arising out of such "continuing" violations may be filed "at any time." ELKOURI & ELKOURI, HOW ARBITRATION WORKS 218-19 (Alan Miles Ruben ed., 6th ed. 2003).

In this Court, NPMHU and the Postal Service argue that the arbitrator jumped the rails in relying on the continuing violations doctrine to construe the contract. In their view, the contractual language regarding pre-1992 assignments was so clear and the arbitrator's error so gross that it cannot be said that he was "even arguably construing or applying the contract." *Garvey*, 532 U.S. at 509 (quoting *E. Associated*, 531 U.S. at 62). According to NPMHU and the Postal Service, the only plausible explanation for the arbitrator's botched decision is that the arbitrator was dispensing "his own brand of industrial justice." *Id.* (quoting *Enter. Wheel*, 363 U.S. at 597). We think that argument reflects a misunderstanding of contract interpretation principles and of the proper role of courts in reviewing labor arbitration

decisions. The fact that an arbitrator relies on a substantive background principle of law or an established canon of construction – and does not follow the plain text of a contract – does not automatically mean the arbitrator has gone rogue. As the Supreme Court has explained, a labor arbitrator is "not confined to the express provisions of the contract," but may also look to other sources – including the "industrial common law" – for help in construing the agreement. *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581-82 (1960). The Court has further stated that an arbitrator may "look for guidance from many sources," and the award is legitimate if it can be "read as embodying a construction of the agreement itself, perhaps with the arbitrator looking to 'the law' for help in determining the sense of the agreement." *Enter. Wheel*, 363 U.S. at 597-98. Relying on traditional canons of construction or other settled interpretive principles – and not merely on the plain text of a contract – might be seriously misguided in certain cases, but such reliance cannot be dismissed as the arbitrator's dispensing "his own brand of industrial justice." Indeed, the arbitrator's approach here bore some resemblance to what courts have done in applying the continuing violations doctrine in federal statute of limitations cases. *See, e.g.*, *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997). In short, although the arbitrator's use of the continuing violations doctrine to construe this contract may have been badly mistaken, it was not outside traditional juridical and interpretive bounds: The arbitrator was "arguably construing or applying the contract." *Garvey*, 532 U.S. at 509 (quoting *E. Associated*, 531 U.S. at 62).

NPMHU and the Postal Service separately posit that the arbitrator never actually addressed the issue of arbitrability, but merely assumed the dispute was arbitrable. They argue that the arbitrator's discussion of the continuing violations

doctrine in his opinion concerned a question about the general timeliness of APWU's grievances, not the issue of arbitrability under the express terms of the Agreement. This is a red herring. NPMHU and the Postal Service argued to the arbitrator that the dispute was not arbitrable because the grievance concerned a pre-1992 assignment, APWU had not filed a grievance by the time of the 1992 Agreement, and APWU did not otherwise meet the conditions specified in the contract for bringing a post-1992 grievance. NPMHU and the Postal Service raised no other argument against arbitrability and no other timeliness-based argument. When the arbitrator discussed the continuing violations doctrine, he was addressing this lone argument raised by NPMHU and the Postal Service against arbitrability.[*]

* * *

Had we been the arbitrators in this case, we would have followed the plain terms of the Agreement and ruled for NPMHU and the Postal Service. But the arbitrator was at least "arguably construing or applying" the Agreement in reaching his decision. *Garvey*, 532 U.S. at 509 (quoting *E. Associated*, 531 U.S. at 62). Therefore, under the Supreme Court's precedents, the courts may not overturn the arbitrator's award. We affirm the judgment of the District Court.

*So ordered.*

---

[*] In his decision, the arbitrator offered an additional ground for finding APWU's grievance to be arbitrable. He suggested that the parties had "all agreed" to have him decide the merits of the grievance, in essence waiving any objections to arbitrability. J.A. 183. Because we find that the arbitrator's reliance on the continuing violations doctrine is sufficient to sustain his decision on arbitrability, we do not consider that alternative ground.

SENTELLE, *Chief Judge*, dissenting: The majority accurately states the facts underlying this controversy, and I have no quarrel with its recitation of the general principles of law applicable to the review of arbitration decisions. However, I cannot agree that the principles, as applied to the facts in this case, lead to the majority's result.

As the majority states, the appellant, National Postal Mail Handlers Union, and appellee, American Postal Workers' Union (APWU), entered an agreement with the United States Postal Service in 1992 which provided: "Effective with the signing of this agreement, no new disputes will be initiated at the local level by either union challenging jurisdictional work assignments in any operations *as they currently exist*." Maj op. at 4 (emphasis added by the court). In 2001, APWU filed two grievances underlying the present appeal concerning union jurisdiction over the scanning of foreign mail at a USPS international service center. These grievances concerned work assignments that were made before 1992 and which seem to be clearly within the compass of the language of the agreement quoted above. Indeed, both the district court and the majority of this court agree that the agreement rendered those assignments not subject to grievance and arbitration. Nonetheless, the arbitrator, relying on a theory of "continuing violations," held that the grievances were arbitrable and ruled for APWU.

Despite the all but universal agreement that the parties had contracted in 1992 that no such grievance as this was to be filed, the district court and the majority would uphold the award because of the deferential standard of review of labor arbitration decisions. The majority relies on the numerous cases of this and the Supreme Court affording the greatest of deference to arbitrators' decisions. For example, in *Major League Baseball*

*Players Ass'n v. Garvey*, 532 U.S. 504 (2001), as the majority recalls, the Court held that "[c]ourts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." 532 U.S. at 509 (quoted at Maj. Op. 6). It is also true, as the majority sets forth, that our broad deference to arbitrators extends even to the question of arbitrability. *See, e.g.*, *USPS v. APWU*, 553 F.3d 686, 692-93 (D.C. Cir. 2009). However, broad as is our deference to arbitrators' decisions, it is not limitless.

In assessing the limits of the deference owed an arbitrator's decision, the Supreme Court has told us that the arbitrator's "award is legitimate only so long as it draws its essence from the collective bargaining agreement." *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960). I submit that when an arbitrator's ruling on arbitrability is 180 degrees removed from what the majority describes as the "plain terms of the agreement" defining the breadth of the arbitrable issues between the parties, that award in no sense "draws its essence" from the agreement.

Granted, the arbitrator and the majority recite general principles of labor and arbitration law which in the absence of the clarity of the agreed exclusion might support arbitrability of the underlying grievance. However, as the Supreme Court explained in *Enterprise Wheel*:

> [The arbitrator] may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

As we have previously noted, "[i]f the arbitrator has rendered a judgment based on external legal sources, wholly without regard to the terms of the parties' contract, then the award could not be said to draw its essence from the contract." *APWU v. USPS*, 789 F.2d 1, 3 (D.C. Cir. 1986). As the arbitrator in the decision before us did precisely that, I would reverse the district court's grant of summary judgment for the defendant and its denial of summary judgment to the plaintiff. It appears to me that the arbitrator based his decision entirely on his external legal theories relating to "continuing violation" without regard to the express terms of the parties' agreement excluding grievances over pre-1992 assignments. In his award, the arbitrator himself recognized that "[t]he language [of the agreement] clearly points in the direction of limiting the filing of grievances for existing work . . . ." That the arbitrator recited the agreement's language, while rendering it utterly ineffectual, does not change the course of his illegitimate reasoning. I would therefore hold that the arbitrator's decision fails even in light of the standard of review mandated by our precedent.

I respectfully dissent.