13-2579-cv
*Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.,*

In the

# United States Court of Appeals

## For the Second Circuit

————

AUGUST TERM 2013
No. 13-2579-cv

AMERICAN POSTAL WORKERS UNION, AFL-CIO,
*Plaintiff-Appellee,*

*v.*

UNITED STATES POSTAL SERVICE,
*Defendant-Appellant.*

————

Appeal from the United States District Court
for the Southern District of New York.
No. 12 Civ. 7896 (KBF) — Katherine B. Forrest, *Judge.*

————

ARGUED: MAY 19, 2014
DECIDED: JUNE 6, 2014

————

Before: WINTER, WALKER and CABRANES, *Circuit Judges*.

————

Defendant United States Postal Service appeals from the May 16, 2013 judgment of the United States District Court for the Southern District of New York (Katherine B. Forrest, *Judge*) granting the motion of plaintiff American Postal Workers Union ("APWU") to vacate an arbitral award on the basis that the arbitrator exceeded his powers under the relevant agreement by applying the doctrine of collateral estoppel against APWU.

We hold that the arbitrator's decision to apply collateral estoppel—which was based on his interpretation of particular provisions of the arbitration agreement, and is within an arbitrator's authority to decide under a broad arbitration agreement—did not exceed his powers under the arbitration agreement as would be required to justify vacating the award.

Accordingly, we **REVERSE** the May 16, 2013 judgment of the District Court and **REMAND** with instructions to confirm the arbitral award.

————

SARAH T. KANTER (Darryl J. Anderson, *on the brief*), O'Donnell, Schwartz & Anderson, P.C., Washington, DC, *for Plaintiff-Appellee American Postal Workers Union, AFL-CIO,*

MICHAEL J. BYARS (Emily E. Daughtry, *on the brief*), Assistant United States Attorneys, *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, NY, *for Defendant-Appellant United States Postal Service*.

————

JOSÉ A. CABRANES, *Circuit Judge*:

Defendant United States Postal Service ("USPS") appeals from the May 16, 2013 judgment of the United States District Court for the Southern District of New York (Katherine B. Forrest, *Judge*) granting the motion of plaintiff American Postal Workers Union ("APWU") to vacate an arbitral award on the basis that the arbitrator had exceeded his powers under the relevant agreement by applying the doctrine of collateral estoppel against APWU.[1]

We hold that the arbitrator's decision to apply collateral estoppel—which was based on his interpretation of particular provisions of the arbitration agreement, and is within an arbitrator's authority to decide under a broad arbitration agreement —did not exceed his powers under the arbitration agreement as would be required to justify vacating the award.

---

[1] The doctrine of collateral estoppel, also known as issue preclusion, provides that a judgment in a prior action may preclude relitigation of issues in a second action, if those issues were actually litigated and necessary to the outcome of the first action. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979).

Accordingly, we reverse the May 16, 2013 judgment of the District Court and remand with instructions to confirm the arbitral award.

## BACKGROUND

Carla LaGreca, a former USPS employee, was initially employed as a Mail Processing Clerk. Around 1986, she applied for workers' compensation benefits for carpal tunnel syndrome developed in connection with her job. In 2007, the USPS reassigned LaGreca to a limited-duty position consistent with her work restrictions. In September 2008 the USPS concluded that it no longer had work available consistent with LaGreca's condition and placed her on leave-without-pay/injured-on-duty status. LaGreca then initiated the grievance and arbitration proceedings giving rise to this case.

### A.    The Grievance and Arbitration Procedures

The APWU and the USPS are parties to a Collective Bargaining Agreement ("CBA") pursuant to which LaGreca may challenge USPS employment decisions that allegedly violate the CBA. The CBA provides for a four-step grievance process culminating in arbitration.

As set forth in the Postal Reorganization Act, 39 U.S.C. § 1005(c),[2] postal employees like LaGreca also receive workers' compensation protection under the Federal Employees' Compensation Act, 5 U.S.C. §§ 8101 *et. seq.* Under this Act, USPS employees with job-related disabilities may seek relief for alleged violations of their rights by appealing to the Merit Systems Protection Board ("MSPB") for a determination of whether the USPS acted "arbitrarily [or] capriciously" in making its employment decisions (an "MSPB appeal"). 5 C.F.R. § 353.304.[3] The MSPB has held that USPS employees "have the right to file both a grievance [under the CBA] and [an MSPB] appeal concerning the same agency action." *Latham v. U.S. Postal Serv.,* 117 M.S.P.R. 400, ¶ 29 (2012).

On September 16, 2008, LaGreca initiated a grievance pursuant to the CBA, which culminated in arbitration. The APWU argued, on LaGreca's behalf, that the elimination of her position violated the CBA, and was based on retaliatory and discriminatory motives.

---

[2] 39 U.S.C. § 1005(c) provides: "Officers and employees of the Postal Service shall be covered by subchapter I of chapter 81 of title 5, relating to compensation for work injuries."

[3] 5 C.F.R. § 353.304(c) provides: "An individual who is partially recovered from a compensable injury may appeal to MSPB for a determination of whether the agency is acting arbitrarily and capriciously in denying restoration." Restoration rights under the Federal Employees' Compensation Act include the creation of limited duty assignments for employees with temporary or permanent compensable injuries. 5 U.S.C. § 8151(b); 5 C.F.R. § 353.301(d).

On December 29, 2008, while the grievance process was ongoing, LaGreca filed an MSPB appeal, claiming that the USPS acted arbitrarily and capriciously in eliminating her position. On August 14, 2009, her MSPB appeal was denied based on the conclusion of an Administrative Law Judge ("ALJ") that the USPS had properly eliminated LaGreca's position because LaGreca's doctor had declared her totally disabled as of September 2, 2008. LaGreca's appeal from that decision was dismissed as untimely.

On March 23, 2012, LaGreca's CBA grievance was submitted to Arbitrator Randall Kelly. The USPS argued that the matter was not arbitrable because the ALJ had already resolved the issue by concluding during the MSPB appeal that LaGreca was totally disabled. Over the objection of the APWU, Arbitrator Kelly agreed to bifurcate the proceeding and first address the question of whether collateral estoppel was applicable in the circumstances presented here.

On this subject, Arbitrator Kelly noted that "[t]he [CBA] specifically recognizes the concept of res judicata when a matter is simultaneously before the MSPB and arbitration; *albeit for veterans*." Joint App'x 26 (emphasis supplied). Specifically, Article 16.9 provides that an "employee appeal[ing] under the Veterans' Preference Act" waives his right to invoke the CBA arbitration process if: (1) "an MSPB settlement agreement is reached"; (2) "a hearing on the merits before the MSPB has begun"; or (3) "the MSPB issues a decision on the merits of the appeal." *Id.* at 101. Arbitrator Kelly then recognized that Article 16.9 does not apply to LaGreca,

but concluded that this provision, as well as other awards where the doctrine of collateral estoppel was applied, supported the conclusion that the CBA embraces the application of preclusion principles. *Id.* at 26.

In applying collateral estoppel to LeGreca's claim, Arbitrator Kelly first determined that the ALJ's decision denying her appeal was the final decision of the MPSB, a matter not disputed on appeal. He then stated that the "undeniable conclusion to be derived from the MSPB decision" was that "[LaGreca] [wa]s totally disabled as of September 2, 2008." *Id.* at 27. Accordingly, "[USPS] could not have been arbitrary and capricious when it terminated her Modified Duty Assignment" and "the matter is . . . therefore not arbitrable based on the doctrine of collateral estoppel." *Id.*

The APWU sought vacatur of this decision in the District Court on the basis that Arbitrator Kelly's decision to apply collateral estoppel was in excess of his powers under the CBA.

### B.     The District Court's Decision

In addressing cross-motions for summary judgment, the District Court stated: "Arbitrator Kelly found no explicit support in the [CBA] for applying collateral estoppel to LaGreca's case. Instead, he purported to find implicit support in the Section 16.9 of the Agreement [addressing claimants pursuant to the Veterans' Preference Act]." *Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, No. 12-cv-7896 (KBF), 2013 WL 1890264, at *3 (S.D.N.Y. May 2, 2013). The District Court asserted that "[t]he [CBA] does not make

any provision for the application of collateral estoppel in general," and the only provision that addresses preclusion does not apply to LaGreca. *Id.* at *4. The District Court stated further that, if any inference could be drawn from Section 16.9, it was that preclusion principles *do not* apply in other circumstances. *Id.*

The District Court concluded that Arbitrator Kelly improperly "relied on the free-floating principle of collateral estoppel to use the MSPB decision to preclude LaGreca from recovering in her grievance under the [CBA] . . . without any contractual basis." *Id.* Accordingly, the District Court vacated Arbitrator Kelly's award and remanded the case for arbitration. This appeal followed.

## DISCUSSION

The question here—whether Arbitrator Kelly had authority, pursuant to the CBA, to apply collateral estoppel to LaGreca's claim—is a legal one, reviewed *de novo* on appeal. *See Scandinavian Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012).

Vacatur is appropriate when an arbitrator's decision "exceeded [his] powers" under the relevant contract. 9 U.S.C. § 10(a)(4).[4] The crux of the excess-of-powers standard is "whether

---

[4] The Federal Arbitration Act ("FAA") provides that a district court "may make an order vacating the [arbitral] award upon the application of any party to the arbitration . . . where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4).

the arbitrator's award draws its essence from the collective bargaining agreement." *St. Mary Home, Inc. v. Serv. Emps. Int'l Union, Dist. 1199*, 116 F.3d 41, 44 (2d Cir. 1997) (internal quotation marks and citations omitted). Particularly where, as here, the challenge is to "an award deciding a question which all concede to have been properly submitted [to the arbitrator] in the first instance,"[5] vacatur under the excess-of-powers standard is appropriate only in the "narrowest" of circumstances. *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 122 (2d Cir. 2011) (internal quotation marks omitted).

The Supreme Court recently reaffirmed that

[i]t is not enough to show that the arbitrator committed an error—or even a serious error. Because the parties bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits.

---

The arbitration here was pursuant to the Postal Service Reorganization Act ("PRA"), not the FAA. Courts, however, have recognized that the stringent standard for vacating an arbitration award is materially the same under the FAA, Labor Management Relations Act ("LMRA"), and the PRA. *See Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 (2013) (relying on LMRA case law when discussing deference to FAA awards); *USPS v. APWU*, 553 F.3d 686, 688-89 (D.C. Cir. 2009) (applying LMRA standards to cases under the PRA).

[5] Although the APWU objected to bifurcation of the proceedings, there is no indication in the record that it disputed that the applicability of collateral estoppel was an arbitrable issue. Moreover, doing so would have been futile in light of our holding in *U.S. Fire Insurance Co. v. National Gypsum Co.*, that the decision whether to apply collateral estoppel based on a prior judicial decision is within the arbitrator's authority under a broad arbitration agreement. 101 F.3d 813, 817 (2d Cir. 1996).

*Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 (2013) (alterations, citations, and internal quotation marks omitted).[6] In order to vacate, a court must find that "the arbitrator act[ed] outside the scope of his contractually delegated authority." *Id.* (internal quotation marks omitted).

In *Oxford Health Plans*, the issue was whether the arbitrator exceeded his authority by permitting class-wide arbitration. *Id.* In holding vacatur inappropriate the Supreme Court noted that the arbitrator "focused on the arbitration clause's text, analyzing (whether correctly or not makes no difference) . . . what it sent to arbitration." *Id.* at 2069. The Court distinguished its decision in *Stolt–Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662 (2010), which "overturned the arbitral decision [to permit class arbitration] because it lacked *any* contractual basis for ordering class procedures, not because it lacked . . . a 'sufficient' one." *Oxford Health Plans*, 133 S. Ct. at 2069. In *Stolt–Nielsen*, the parties had expressly stipulated that they had never reached an agreement regarding class arbitration. *Id.* Accordingly, the arbitral decision "was not—indeed, could not have been—based on a determination regarding the parties' intent." *Id.* (internal quotation marks omitted). Similarly, in *Harry Hoffman Printing, Inc. v. Graphic Communications International Union, Local 261*—the case relied upon by the District Court—we vacated an arbitral decision imposing additional due process requirements because the arbitration panel "creat[ed]

---

[6] The District Court did not have the guidance of *Oxford Health Plans* when deciding whether to vacate the arbitral award in this case.

entirely new terms" in the CBA, notwithstanding a so-called "no modification" clause. 950 F.2d 95, 100 (2d Cir. 1991). Simply put, as in *Stolt-Nielsen*, the arbitral panel's decision in *Harry Hoffman* lacked *any* contractual basis and, indeed, was expressly prohibited by the CBA. *See id*. at 99-100.

The situation here is analogous to *Oxford Health Plans*: Arbitrator Kelly looked at the terms of the CBA and concluded that, in the circumstances presented, they supported application of collateral estoppel. Nothing in the CBA expressly forecloses use of preclusion principles with respect to MSPB appeals or other grievance proceedings. Moreover, we have held that under a broad arbitration agreement such as the one at issue in this case, arbitrators possess authority to apply collateral estoppel based on prior judicial or administrative decisions. *See, e.g.*, *U.S. Fire Ins. Co. v. Nat'l Gypsum Co.*, 101 F.3d 813, 817 (2d Cir. 1996) ("[A]mbiguity as to whether an issue [of collateral estoppel] is within the scope of an arbitration agreement is resolved in favor of arbitrability."); *Nat'l Union Fire Ins. Co. v. Belco Petroleum Corp.*, 88 F.3d 129, 135 (2d Cir. 1996) ("Nothing in the arbitration clause gives any indication that anyone other than the arbitrator should decide the preclusive effect of a prior arbitration.").

In sum, Arbitrator Kelly concluded that Section 16.9 demonstrated the shared intent of the parties to the CBA to permit decisions of the MSPB to inform, and in some cases, preclude decisions in a subsequent arbitration. Nothing in the CBA expressly foreclosed this conclusion. The District Court concluded that, "[i]f

one were to draw any inference from [Section 16.9], it would be the converse inference that, because the [CBA] explains where principles of preclusion do apply, those principles do *not* apply elsewhere." *Am. Postal Workers Union*, 2013 WL 1890264, at \*4. That is simply a different interpretation of the contract, and while arguably a better interpretation of the CBA, it is simply not a basis for vacatur. Because Kelly was "arguably construing or applying the contract," his decisions "must stand, regardless of a [district] court's view of its (de)merits." *Oxford Health Plans*, 133 S. Ct. at 2068 (internal quotation marks omitted).

## CONCLUSION

To summarize, we hold that:

(1)     Under the broad arbitration agreement in the CBA, the preclusive effect of a prior judicial or administrative decision is a matter to be decided by the arbitrator.

(2)     Nothing in the CBA foreclosed application of preclusion principles by the arbitrator.

(3)     The arbitrator did not exceed his authority by interpreting the terms of the contract, whether correctly or not, to permit use of collateral estoppel based on a prior administrative decision.

Accordingly, we **REVERSE** the May 16, 2013 judgment of the District Court and **REMAND** with instructions to confirm the arbitral award.